STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

WCA 13-792


CHRISTY ROGEL

VERSUS

DOLLAR GENERAL CORP.



**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 3
PARISH OF CALCASIEU, NO. 11-03785
SAM L. LOWERY, WORKERS' COMPENSATION JUDGE

**********

**BILLY HOWARD EZELL**
**JUDGE**

**********

Court composed of Elizabeth A. Pickett, Billy Howard Ezell, and John E. Conery, Judges.




**AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.**




**Marcus Miller Zimmerman**
**4216 Lake Street**
**Lake Charles, LA 70605**
**(337) 474-1644**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
        **Christy Rogel**

**Michael Meunier**
**Sullivan, Stolier, Kovata**
**909 Poydras St., Suite 2600**
**New Orleans, LA 70112-4000**
**(504) 561-1044**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Dollar General Corp. (Dolgencorp, LLC)**

**EZELL, Judge.**

In this workers' compensation case, Dollar General appeals the decision of the workers' compensation judge (WCJ) below awarding Christy Rogel supplemental earning benefits (SEB), medical expenses, a second medical opinion, as well as penalties and attorney fees. For the following reasons, we hereby affirm the decision of the WCJ in part, reverse in part, and render judgment.

Ms. Rogel was the store manager at Dollar General in Starks, Louisiana. On June 17, 2010, she was moving a rolltainer loaded with 600 pounds of charcoal to the store's sidewalk when the rolltainer tipped, pinning her. As a result, her ankle suffered a chip avulsion. She continued to work until July 6, 2010, when her ankle was surgically repaired by Dr. Geoffrey Collins. She was placed on total disability benefits from this date until she returned to work on September 2, 2010. Ms. Rogel returned to work on light-duty status; however, because she was often alone at the store, she continued to perform duties that required her to labor beyond the light-duty work she was restricted to.

In December 2010, Ms. Rogel again presented to Dr. Collins with complaints that her ankle pain was getting worse and affecting her work. Eventually, a functional capacity evaluation was ordered which found swelling, tenderness, decreased mobility, and an abnormal gait and standing mechanics. The functional capacity evaluation and Dr. Collins recommended limitations on standing and walking. Dr. Collins ultimately decided that a second surgery was needed to remove hardware placed on the ankle during Ms. Rogel's first surgery. This surgery was delayed when Ms. Rogel suffered chest pains during her pre-surgery physical and she was taken via ambulance to the hospital. She was cleared, but could not be anesthetized until a complete cardiac work-up was performed.

While Dollar General sought to authorize this work-up, an error by Dr. Collins' office delayed this for several months. Ms. Rogel eventually resigned her position in April 2011. After that, the second surgery was performed.

Ms. Rogel filed the current workers' compensation action seeking SEB, medical expenses, and penalties and attorney fees. The WCJ awarded her SEB, medical expenses related to her hospitalization for chest pain, and penalties and attorney fees for Dollar General's failure to timely pay those claims. The WCJ also rejected Dollar General's allegations that Ms. Rogel committed fraud under La.R.S. 23:1208 and approved a second medical opinion for her continuing ankle pain. From that decision, Dollar General appeals.

Dollar General asserts six assignments of error on appeal. It claims:

1. The [WCJ] clearly erred in awarding SEBs;

2. The [WCJ] clearly erred in authorizing a second choice of orthopedic surgeon;

3. The [WCJ] clearly erred in ordering defendant to pay medical bills which were not related to the work accident;

4. The [WCJ] clearly erred in finding that defendant did not timely approve the cardiac clearance, when the uniform evidence shows that in fact the employer did just that and;

5. The [WCJ] clearly erred in refusing to apply La. R.S. 23:1208 forfeiture in the face of numerous deliberate misrepresentations made by the plaintiff in order to obtain workers' compensation benefits; and

6. The [WCJ] clearly erred in awarding penalties and attorney's fees and in finding that defendant did not reasonably controvert the plaintiff's claims.

In *Dean v. Southmark Const.*, 03-1051, p. 7 (La. 7/6/04), 879 So.2d 112, 117, the supreme court stated:

> In worker's compensation cases, the appropriate standard of review to be applied by the appellate court to the OWC's findings of fact is the "manifest error-clearly wrong" standard. *Brown v. Coastal*

2

*Construction & Engineering, Inc.,* 96-2705 (La.App. 1 Cir. 11/7/97), 704 So.2d 8, 10, (citing *Alexander v. Pellerin Marble & Granite,* 93-1698, pp. 5-6 (La.1/14/94), 630 So.2d 706, 710). Accordingly, the findings of the OWC will not be set aside by a reviewing court unless they are found to be clearly wrong in light of the record viewed in its entirety. *Alexander,* 630 So.2d at 710. Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. *Robinson v. North American Salt Co.,* 02-1869 (La.App. 1 Cir.2003), 865 So.2d 98, 105. The court of appeal may not reverse the findings of the lower court even when convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. *Robinson,* 865 So.2d at 105.

Supplemental Earnings Benefits

Dollar General first claims that the WCJ erred in awarding Ms. Rogel SEB after she was able to return to part-time work.

> "The purpose of [SEBs] is to compensate the injured employee for the wage earning capacity he has lost as a result of his accident." *Banks v. Industrial Roofing & Sheet Metal Works, Inc.,* 96-2840 (La.7/1/97), 696 So.2d 551, 556. An employee is entitled to receive SEBs if he sustains a work-related injury that results in his inability to earn ninety percent (90%) or more of his average pre-injury wage. La. R.S. 23:1221(3)(a). Initially, the employee bears the burden of proving, by a preponderance of the evidence, that the injury resulted in his inability to earn that amount under the facts and circumstances of the individual case. *Banks, supra* at 556. "In determining if an injured employee has made out a prima facie case of entitlement to [SEBs], the trial court may and should take into account all those factors which might bear on an employee's ability to earn a wage." *Daigle v. Sherwin–Williams Co.,* 545 So.2d 1005, 1009 (La.1989) (quoting *Gaspard v. St. Paul Fire and Marine Ins. Co.,* 483 So.2d 1037, 1039 (La.App. 3 Cir.1985)). It is only when the employee overcomes this initial step that the burden shifts to the employer to prove, by a preponderance of the evidence, that the employee is physically able to perform a certain job and that the job was offered to the employee or that the job was available to the employee in his or the employee's community or reasonable geographic location. La. R.S. 23:1221(3)(c)(i); *Banks, supra* at 556; *Daigle, supra* at 1009.

*Poissenot v. St. Bernard Parish Sheriff's Office,* 09–2793, pp. 4-5 (La. 1/9/11), 56 So.3d 170, 174 (alterations in original)(footnote omitted). "In determining whether a [workers' compensation judge's] finding that an employee has met his initial

3

burden of proving entitlement to SEBs is manifestly erroneous, a reviewing court must examine the record for *all* evidence that bears upon the employee's inability to earn 90% or more of his pre-injury wages." *Seal v. Gaylord Container Corp.,* 97-688, p. 8 (La. 12/2/97), 704 So.2d 1161, 1166

Ms. Rogel clearly suffered a workplace accident when the rolltainer fell on her ankle. Dollar General does not dispute that. It is further clear that she is limited to light to medium-duty work with limited time on her feet, prolonged stooping, and in the amount of weight she is to lift. This is supported by both her testimony and Dr. Collins' medical records. Ms. Rogel testified that she cannot work because of her continued ankle pain. This testimony is uncontroverted by Dollar General. Additionally, the WCJ stated that he found Ms. Rogel to be very credible and praised her work ethic and history of continuing work through pain. This is bolstered by her uncontested testimony that, while between surgeries, she performed duties at a level higher than those she was limited to by her doctor because that work needed to be done and Dollar General would not hire additional help. Based on the WCJ's evaluation of MS. Rogel's credibility and the record before this court, there is reasonable basis for the workers' compensation judge's award of SEB. What is more, Dollar General has failed to prove that Ms. Rogel is "physically able to perform a certain job and that the job was offered to the employee or that the job was available to the employee in his or the employee's community or reasonable geographic location." *Poissenot*, 56 So.3d at 174. Accordingly, this assignment of error is without merit.

Second Choice of Physician

In its second assignment of error, Dollar General claims that the WCJ erred in authorizing Ms. Rogel a second medical opinion regarding her ankle. Louisiana

4

Revised Statutes 23:1121(B) provides that an employee has a right to select one treating physician in any field or specialty. However, *Scott v. Piccadilly Cafeteria*, 97-1584 (La. App. 3 Cir. 4/1/98), 708 So.2d 1296, recognized that while La.R.S. 23:1121(B) requires that an employee obtain prior consent from the employer or his workers' compensation carrier for a change of treating physician within that same field or specialty, an employer may be bound to provide additional expenses from another physician in the same field or specialty as long as the treatment is both reasonable and necessary to alleviate the employee's symptoms.

Here, the WCJ obviously credited Ms. Rogel's assertion that she continues to experience pain in her ankle, and the WCJ found that the sought-after care might relieve those painful symptoms. While Ms. Rogel's treating physician, Dr. Collins, was of the opinion that he could do nothing else for Ms. Rogel, his records indicate that she still presented with pain and swelling at her last visit with him. Moreover, Dr. Collins felt that a second opinion was not unreasonable. Thus, the evidence reasonably supports a finding of necessity. Therefore, the WCJ's finding cannot be clearly wrong.

Unrelated Medical Expenses

Dollar General next claims the WCJ erred in awarding Ms. Rogel expenses related to hospital visits on March 22 and 28, 2011, arising from incidents of chest pain suffered by Ms. Rogel. We agree.

The record reflects that on March 22, 2011, Ms. Rogel was having tests performed as part of a pre-surgery check-up as ordered by Dr. Collins. These included a chest x-ray, blood work, and an EKG. During the EKG, Ms. Rogel began to experience chest pain. The doctor present at the time became concerned enough that an ambulance was called and she was sent to Lake Charles Memorial

Hospital (LCMH) for diagnosis and treatment for that chest pain. The records from LCMH show that her chief complaint was chest pain which was deep, intensified by moving, and relieved by nothing. The records show that Ms. Rogel had suffered this pain for two months with increasing frequency. She was diagnosed with non-cardiac chest pain.

The record is clear that some of the expenses incurred on March 22, 2011, are related to her workers' compensation claim. The chest x-ray, EKG, and blood-work ordered by Dr. Collins were part of clearing Ms. Rogel for her second surgery. Thus, the charges related to that were correctly awarded by the WCJ. Those include $30.00 to Radiology Associates of SWLA, $218.00 to The Clinic, and $95.00 for charges from the Medical Laboratory.

However, the record is also clear that when Ms. Rogel began to experience chest pain during the EKG, she was sent via ambulance to LCMH for treatment of that potentially life threatening condition. There is nothing in the records from LCMH that indicates any pre-surgical cardiac work-up was performed, but rather, that she was simply treated for her chest pain and discharged. While the work-up itself would be related, since it was required to allow Ms. Rogel to have her second surgery on her injured ankle, her chest pain and treatment thereof had nothing to do with the accident at Dollar General whatsoever. Accordingly, the WCJ committed manifest error when he ordered Dollar General to pay for medical expenses not related to Ms. Rogel's work-place injury. We hereby reverse the awards of $1,228.59 to Acadian Ambulance, and $2,268.00 and $1,146.15 to LCMH.

Dollar General also challenges the WCJ's finding that it is responsible for charges stemming from Ms. Rogel's visit to Moss Regional Hospital on March 28, 2011. Again, we agree.

Even accepting as true Ms. Rogel's unlikely assertion that she went to Moss Regional partially to have the cardiac work-up performed and partially due to ongoing chest pain, she testified that no such work up was done at that time. This is also shown by the medical records from Moss Regional. Rather, she testified that the doctor at Moss Regional sent her to Lafayette "to have a complete work up" after the EKG performed there to help in treating her chest pain was normal. Moreover, she stated that she never told anyone at Moss Regional to send Dollar General any of the records from that day, which Dollar General would have needed had the work-up actually been performed. What the medical records from Moss Regional do show is that Ms. Rogel complained of "constant chest pain" which had been ongoing for two days. No work-up is ever mentioned in the records. She was simply treated for anxiety related chest pains, something which has nothing to do with her work-place accident. Accordingly, Dollar General is not responsible for the $610.34 in charges arising from her visit to the hospital there. The WCJ was clearly wrong in his finding that the visit was related to her injury and that finding is hereby reversed.

Timely Approval

Dollar General's next assignment of error claims that the WCJ erred in finding it failed to timely approve the cardiac work-up required to clear Ms. Rogel for her second surgery. However, while the WCJ did discuss this in his reasons for judgment, the judgment itself makes no mention of or award for anything in connection with that issue. Accordingly, we need not address that assignment of error.

Fraud

As its fifth assignment of error, Dollar General claims that the WCJ erred in failing to find that Ms. Rogel committed fraud under La.R.S. 23:1208. An employer claiming that an employee has forfeited his or her rights under La.R.S. 23:1208 must prove "that (1) there is a false statement or representation, (2) it is willfully made, and (3) it is made for the purpose of obtaining or defeating any benefit or payment." *Resweber v. Haroil Constr. Co.,* 94-2708, 94-3138, p. 7 (La. 9/5/95), 660 So.2d 7, 12. The supreme court further explained:

> [T]he statute does not require the forfeiture of benefits for any false statement, but rather only false statements that are *willfully made for the purpose of obtaining benefits.* It is evident that the relationship between the false statement and the pending claim will be probative in determining whether the statement was made willfully for the purpose of obtaining benefits….Clearly, an inadvertent and inconsequential false statement would not result in forfeiture of benefits.

*Id.* at 16.

A WCJ's determination as to whether a claimant has made a false statement, willfully, for the purpose of obtaining workers' compensation benefits is a finding of fact, and is, therefore, subject to the manifest error standard of review. *Jim Walter Homes, Inc. v. Guilbeau,* 05-1473 (La.App. 3 Cir. 6/21/06), 934 So.2d 239. Further,

> When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. But where such factors are not present, and a factfinder's finding is based on its decision to credit the testimony of

8

one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.

*Rosell v. ESCO,* 549 So.2d 840, 844-45 (La.1989) (citations omitted).

Here, the record is devoid of any evidence of false statements by Ms. Rogel willfully made for the purpose of obtaining benefits. To the contrary, the WCJ explicitly found Ms. Rogel to be a credible witness, stating that "[a] fair reading of the evidence suggests that at no point did she deliberately misrepresent her previous medical history or exaggerate her injuries from the accident." Moreover, as noted above, the WCJ was extremely complimentary of Ms. Rogel's work history and work ethic and felt that Dollar General allegations of fraud were "creative but scarcely credible." There is nothing in the record which shows this determination to be clearly wrong.

<u>Penalties and Attorney Fees</u>

Finally, Dollar General claims that the WCJ erred in granting Ms. Rogel penalties and attorney fees for its failure to timely pay benefits and expenses. The Louisiana Supreme Court discussed the meaning of "reasonably controverting a claim" in *Brown v. Texas-LA Cartage, Inc.,* 98–1063, p. 9 (La. 12/1/98), 721 So.2d 885, 890, as follows:

> In general, one can surmise from the plain meaning of the words making up the phrase "reasonably controvert" that in order to reasonably controvert a claim, the defendant must have some valid reason or evidence upon which to base his denial of benefits. Thus, to determine whether the claimant's right has been reasonably controverted, thereby precluding the imposition of penalties and attorney fees under La. R.S. 23:1201, a court must ascertain whether the employer or his insurer engaged in a nonfrivolous legal dispute or possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time he refused to pay all or part of the benefits allegedly owed.

The determination of whether an employer should be cast with penalties and attorney fees in a workers' compensation case is essentially a question of fact and subject to the manifest error/clearly wrong standard of review. *Reed v. Abshire,* 05-744 (La.App. 3 Cir. 2/1/06), 921 So.2d 1224.

The record before this court does not show that the WCJ erred in granting Ms. Rogel $2,000.00 in penalties for Dollar General's failure to pay SEB. Her medical records showed a consistent history of problems, including pain and swelling after even the second surgery. Ms. Rogel remains restricted to light to medium-duty work, despite her prior attempts to work under the harsher duties of her job with Dollar General. Ms. Rogel's testimony concerning her injuries is supported by her medical records and her testimony that Dollar General failed to accommodate her restricted duties is uncontroverted. We can find nothing in the record which shows the WCJ erred in granting this penalty.

Likewise, even though Dollar General would have reasonably controverted the claims for the LCMH, Moss Regional, and Acadian Ambulance expenses reversed above, because it failed to give any reason at all for the failure to pay the medical expenses from March 22, 2011, ordered by Dr. Collins and directly related to her second surgery, we cannot say that the WCJ erred in awarding the $2,000.00 penalty for those smaller, completely related charges. As there is no evidence the WCJ's awards of penalties and attorney fees were manifestly erroneous, this assignment of error is without merit.

Ms. Rogel has answered this appeal seeking additional fees for work done on appeal. Considering our decision affirming the majority of the judgment, Ms. Rogel is entitled to additional attorney fees for work done on appeal, and same will be awarded.

## DISPOSITION

For the above reasons, the ruling of the WCJ is hereby affirmed in part and reversed in part. The portions of the judgment awarding Ms. Rogel awards of $1,228.59 to Acadian Ambulance, $2,268.00 and $1,146.15 to LCMH, and $610.34 to Moss Regional hospital are reversed. The judgment is affirmed in all other respects. Ms. Rogel is awarded additional attorney fees of $2,000.00 for work performed on this appeal.

**AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.**