# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 17-936

KATINA HODGES

VERSUS

GOLDEN NUGGET LAKE CHARLES, LLC

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - DISTRICT 3
PARISH OF CALCASIEU, NO. 15-02226
CHARLOTTE A. L. BUSHNELL, WORKERS' COMPENSATION JUDGE

\*\*\*\*\*\*\*\*\*\*

## ELIZABETH A. PICKETT
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, John D. Saunders, and Elizabeth A. Pickett, Judges.

**AMENDED AND AFFIRMED AS AMENDED.**

**Lance S. Ostendorf**
**John G. Alsobrook**
**Ostendorf, Tate, Barnett, LLP**
**650 Poydras Street, Suite 1460**
**New Orleans, LA 70130**
**(504) 324-2244**
**COUNSEL FOR DEFENDANT-APPELLANT:**
    **Golden Nugget Lake Charles, LLC**

**Justin T. Morales**
**Todd A. Townsley**
**Rex D. Townsley**
**The Townsley Law Firm**
**3102 Enterprise Boulevard**
**Lake Charles, LA 70607**
**(337) 478-1400**
**COUNSEL FOR PLAINTIFF-APPELLEE:**
    **Katina Hodges**

**PICKETT, Judge.**

The defendant employer appeals a judgment that awards the claimant workers' compensation benefits, penalties, and attorney fees. For the reasons that follow, we amend the judgment and affirm it as amended.

## FACTS

On January 6, 2015, Katina Hodges was working at the Golden Nugget Casino as a security guard. While standing next to a podium at an entrance to the casino where she performed identification checks, Ms. Hodges fainted and fell to the floor. A surveillance video shows that she fell toward the podium and struck her left shoulder on it. She continued falling, and her lower right leg and knee struck the marble floor. The rest of her body followed, until the entire right side of her body contacted the floor. The right side of her head then hit the floor, and Ms. Hodges appeared to experience a seizure because her body continued moving, yet witnesses reported that she was unconscious at the time.

Ms. Hodges was transported by ambulance to Christus St. Patrick Hospital in Lake Charles where CT scans were performed and interpreted as showing that she suffered a subarachnoid hemorrhage in the right frontal portion of her brain. She was then transported to Our Lady of the Lake Hospital in Baton Rouge where additional CT scans were interpreted as also showing a subarachnoid hemorrhage in the right frontal portion of Ms. Hodges' brain. Dr. Rebecca Whiddon, a neurologist, treated Ms. Hodges at Our Lady of the Lake Hospital and agreed with the radiologists' interpretations of a subarachnoid hemorrhage. Ms. Hodges treated with Dr. Whiddon until March 18, 2015. Thereafter, she treated with a number of physicians for injuries and aggravations of pre-existing injuries or conditions, including low back pain, right knee and leg pain, and depression that she claims resulted from her fall.

On January 30, 2015, Golden Nugget filed a Notice of Controversion, denying it owed benefits and medical expenses to Ms. Hodges on the grounds that her claim was not compensable because it was caused by a fainting spell. In April 2015, Ms. Hodges filed a Disputed Claim for Compensation wherein she alleged that she passed out, fell, and hit her head while working. Golden Nugget denied Ms. Hodges' claim and asserted that her alleged injury was not compensable under the Workers' Compensation Act. It also alleged that she forfeited any benefits to which she may be entitled under La.R.S. 23:1208 because of misrepresentations she made during the course of her claim.

On March 6, 2017, the matter was tried before the Workers' Compensation Judge (WCJ). After taking the matter under advisement, the WCJ issued oral reasons for ruling on May 30, 2017, holding that Ms. Hodges' fall on January 6, 2015, was an accident. The WCJ further held that Ms. Hodges suffered injuries as a result of the accident and ordered Golden Nugget to pay total temporary disability benefits, supplemental earnings benefits (SEBs), medical benefits, penalties in the amount of $2,000 for its failure to pay Ms. Hodges indemnity benefits and $2,000 for its failure to pay her medical expenses, and attorney fees in the amount of $25,000. On June 20, 2017, the WCJ signed a judgment conforming to those reasons.

Golden Nugget appealed that judgment and urges that the WCJ erred in awarding Ms. Hodges workers' compensation benefits, penalties, and attorney fees.

**STANDARD OF REVIEW**

"Factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of appellate review. In applying the manifest error standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one." *Foster v.*

2

*Rabalais Masonry, Inc.*, 01-1394, p. 2 (La.App. 3 Cir. 3/6/02), 811 So.2d 1160, 1162, *writ denied*, 02-1164 (La. 6/14/02), 818 So.2d 784 (citation omitted).

***Waiver of Benefits Pursuant to La.R.S. 23:1208***

Golden Nuggets first contends that the WCJ erred in rejecting its claim that Ms. Hodges forfeited her right to workers' compensation benefits, as provided by La.R.S. 23:1208(A), because she made misrepresentations during the course of her claim in response to discovery requests, to its vocational rehabilitation experts, in her deposition, and to her treating physicians.

Louisiana Revised Statutes 23:1208(A) provides that it is "unlawful for any person, for the purpose of obtaining . . . any benefit or payment . . . to willfully make a false statement or representation." An employee who violates this provision "shall, upon determination by workers' compensation judge, forfeit any right to compensation benefits under this Chapter." La.R.S. 23:1208(E). For an employer to prove a claim for forfeiture of workers' compensation benefits under La.R.S. 23:1208, it must prove that (1) the claimant made a false statement or representation, (2) the statement was willfully made, and (3) the statement was made for the purpose of obtaining or defeating any benefit or payment. *Resweber v. Haroil Constr. Co.*, 94-2708, 94-3138 (La. 9/5/95), 660 So.2d 7. Inadvertent or inconsequential false statements do not satisfy the employer's burden of proof. *Rougeou v. St.Francis Cabrini Hosp.*, 12-854 (La.App. 3 Cir. 2/6/13), 107 So.3d 851. A WCJ's finding that a claimant did not make a false statement to obtain benefits is a finding of fact subject to the manifest error standard of review. *Gibson v. Resin Sys., Inc.*, 15-299, p. 8 (La.App. 3 Cir. 10/7/15), 175 So.3d 1141, 1147.

Golden Nugget asserts that Ms. Hodges denied any prior injuries, prior incidents, or prior physical or mental impairments before the accident in her

3

Answers to Interrogatories and Responses to Request for Production it propounded to her and when it deposed her on August 24, 2015. Golden Nugget also points out that Ms. Hodges failed to report on physician questionnaires that prior to January 2015, she had complaints of and treatment for left shoulder pain, which was diagnosed as a tear of the superior labrum, and low back pain. It also notes that Ms. Hodges failed to report to physicians for more than four months that she slipped and fell off her porch in April 2015, injuring her right ankle, right knee, and back. Golden Nugget further asserts that admissions by Ms. Hodges that she reported only the accident, but not the slip and fall off her porch, to Dr. Seth Billiodeaux, her pain management specialist, and Drs. Robert Abramson and Christina Notarianni, two neurosurgeons who also treated her, constitutes misrepresentations that warrant forfeiture. It also points to Ms. Hodges' denial of working when she worked for Lofton Staffing & Security Services from October 2015 through May 2016 and to misrepresentations she made regarding the time frame within which she worked, as well as the number of hours she worked, as cause for forfeiting benefits.

Ms. Hodges defends this claim arguing that she suffered a brain injury as a result of the accident which resulted in some memory loss that excuses her failure to timely recall and report past events. She also argues that testing performed by Golden Nugget's vocational rehabilitation expert showed she has a 5.1 grade equivalent in Reading Recognition, a 4.4 grade equivalent in Reading Comprehension, and a 3.7 grade equivalent in Math is evidence that her brain injury affected her memory because she graduated from high school and completed some college.

Golden Nugget counters Ms. Hodges' claims that she merely forgot to report pre- and post-accident medical conditions with Lofton's employment records.

4

Lofton's records show that Ms. Hodges began working in October 2015 and that before she began working, Ms. Hodges was administered (1) a Warehouse Safety & Inventory Test on which she scored 80; (2) a Basic Skills test on which she scored 100; (3) a Basic Arithmetic test on which she scored 90; and (4) a Grammar & Spelling Industrial test on which she scored a 71. On January 28, 2016, she attended a Security Training Class and scored 96 on a test administered at that time.

Lofton's employment records also show that Ms. Hodges worked more than she claims. Beginning in October 2015, she worked every month until June 2016. She worked during twenty-five of the thirty-five weeks in that period. Ms. Hodges met with Golden Nugget's vocational rehabilitation expert on March 8, 2016, and denied that she was working; however, Lofton paid her for work performed during fourteen of the fifteen weeks immediately preceding that meeting. During those weeks, she worked as little as four hours per week and as many as forty hours per week. She worked 21.33 hours the week preceding the March 8 meeting with the vocational rehabilitation expert, and she worked 37.33 hours the week ending February 29, 2016.

In May 2016, Ms. Hodges received a favorable decision on a claim she had filed for Social Security disability benefits in which she alleged that she was disabled beginning December 31, 2011. She testified that she began receiving those benefits in May or June 2016. She did not work for Lofton after receiving Social Security disability benefits.

Ms. Hodges cites her own testimony and the testimony of her son as factual support for her claim that her fall and brain injury have caused her to experience memory loss. She also cites *Keys v. Republic Services.*, 12-252 (La.App. 3 Cir. 10/3/12), 99 So.3d 734, *writ granted*, 12-2369 (La. 1/18/13), 107 So.3d 619, *writ denied as improvidently granted*, 12-2369 (La. 5/7/13), 118 So.3d 342, where

medical evidence established that the claimant's Huntington's disease affected his brain and excused his or her misstatements or misrepresentations as to his prior medical history.

Our review of Ms. Hodges' medical records does not show that any physician reported her head injury caused or could cause her to suffer memory loss. It does show, however, that Dr. Horatio A. Millin, Jr., a psychiatrist who began treating Ms. Hodges after the accident, diagnosed her with major depressive disorder, attention deficit disorder, general anxiety disorder, and insomnia. Dr. Millin explained that his role in treating Ms. Hodges was to determine the impact of chronic pain on her psychological symptoms. He testified it is well known that depression can cause short-term memory deficit. He also pointed out that Dr. Andrew Thrasher, a psychiatrist, reported in 2014 that Ms. Hodges had a short-term memory deficit.

The WCJ denied Golden Nugget's claim for forfeiture, stating: "Considering the nature of the claimant's injury, this court is unable to find that Ms. Hodges possessed the required intent to defraud the workers' compensation system." The discrepancies Golden Nugget relies on were detailed to the WCJ at trial, and, despite those discrepancies, the WCJ concluded that Golden Nugget had not established that Ms. Hodges had the requisite intent to justify forfeiture of her benefits.

Golden Nugget had the burden of proving this defense; however, it did not present evidence to establish what short-term memory loss or deficit is and how it impacts a person's ability to recall and report events. In light of the totality of the evidence, especially the medical evidence, and the "great deference" owed to the trier of fact, we cannot say that Golden Nugget carried its burden of proving Ms. Hodges violated La.R.S. 23:1208. *Rogel v. Dollar Gen. Corp.*, 13-792

6

(La.App. 3 Cir. 12/11/13), 132 So.3d 978, *writ denied*, 14-58 (La. 3/14/14), 135 So.3d 604 (quoting *Rosell v. ESCO*, 549 So.2d 840, 844 (La.1989). Accordingly, we find no manifest error in the WCJ's denial of Golden Nugget's La.R.S. 23:1208(A) defense.

***The WCJ Erred in Holding that Katina Hodges' Injuries are Compensable***

Golden Nugget next argues that the WCJ erred in finding that Ms. Hodges proved she was injured as the result of "an accident," as defined by the Workers' Compensation Act. Pointing to the testimony of its two experts, Dr. Curtis Partington, a neuroradiologist, and Dr. James Domingue, a neurologist, it asserts that Ms. Hodges suffered a blood clot in her brain that is not compensable under the Workers' Compensation Act.

The Workers' Compensation Act defines a compensable injury to "include only injuries by violence to the physical structure of the body and such disease or infections as naturally result therefrom. These terms shall in no case be construed to include any other form of disease or derangement, however caused or contracted." La.R.S. 23:1021(8)(a). The Act also provides that a "perivascular injury . . . shall not be considered a personal injury by accident arising out of and in the course of employment and is not compensable . . . unless it is demonstrated by clear and convincing evidence that" the following two conditions are satisfied:

> (i) The physical work stress was extraordinary and unusual in comparison to the stress or exertion experienced by the average employee in that occupation, and

> (ii) The physical work stress or exertion, and not some other source of stress or preexisting condition, was the predominant and major cause of the heart-related or perivascular injury, illness, or death.

La.R.S. 23:1021(8)(e).

Ms. Hodges presented the video showing her fall of January 6, 2015, her testimony, her son's testimony, and the testimony of a radiologist, a neurologist,

7

and a neurosurgeon to establish that her fall was a compensable accident. Dr. Whiddon confirmed Ms. Hodges' diagnosis as a small right frontal subarachnoid hemorrhage in her brain. Based on the events immediately preceding Ms. Hodges' fall, Dr. Whiddon related the hemorrhage to the fall because she found no alternative explanation for it in the CT scans.

Dr. Richard Martinez, a diagnostic and interventional radiologist, testified in detail with regard to the CT scan taken at Christus St. Patrick Hospital shortly after Ms. Hodges' fall and also confirmed the diagnosis of subarachnoid hemorrhage. Dr. Martinez and Dr. Whiddon opined that the mechanics of her fall, as depicted on the video, provide the best explanation for her injury because her head came to an abrupt stop when it hit the floor, causing her brain to slam against that side of her skull then continue moving such that it bounced back and hit the opposite side of her skull. Dr. William Brennan, a neurosurgeon, explained in detail the pertinent anatomy of the brain and the manner in which blood flows to and from the head and brain. He testified that the diagnosed subarachnoid hemorrhage is easily demonstrated on Ms. Hodges' CT scans and is "not surprising in light of how she fell."

Drs. Partington and Domingue testified that CT scans of Ms. Hodges' brain show a transverse sinus thrombosis or blood clot in one of the veins in her head that drains blood from her brain which caused her to faint and have seizures. Dr. Partington testified that he did not see any sign of traumatic injury to her brain. Dr. Partington did not examine Ms. Hodges or view the video of her fall and testified that CT scans of her brain provided him all the information he needed to diagnose her problem. Dr. Domingue reviewed the video of Ms. Hodges' fall and admitted it is hard to say that the manner in which her head hit the floor when she fell did not contribute to the hemorrhaging in her brain.

8

Dr. Whiddon found nothing in Ms. Hodges' presentation that suggested a blood clot as described by Drs. Partington and Domingue. She explained that the type of bleeding and area of bleeding in Ms. Hodges's brain was unusual for the type of blood clot they diagnosed. Dr. Martinez also disagreed with the diagnosis of a blood clot, explaining, in part, that a venous thrombosis is a latent complication that occurs over time, which is not immediately seen. Dr. Brennan further explained that a transverse sinus thrombosis is an extremely rare condition that has catastrophic results in its victims that are not present here. Drs. Martinez and Brennan both opined that the manner in which Ms. Hodges fell and hit her head was integral to understanding her injury and why it is most likely that she suffered a subarachnoid hemorrhage when she fell.

As is often the case in workers' compensation matters, the WCJ was faced with divergent medical opinions. She had the duty of considering the differing opinions and determining which opinion was most credible. When evaluating expert testimony, a WCJ is granted considerable discretion, and the acceptance of one expert's opinion over the conflicting testimony of another expert can never be manifestly erroneous. *Richard v. Vermilion Hosp.*, 10-385 (La.App. 3 Cir. 6/9/10), 41 So.3d 1219, *writ denied*, 10-1611 (La. 10/8/10), 46 So.3d 1269.

In accordance with the general rule that a treating physician's opinion should be given greater weight than consulting physicians, the WCJ reviewed the testimony of each expert and accepted the findings of Dr. Whiddon, Ms. Hodges' neurologist, that Ms. Hodges suffered a subarachnoid hemorrhage when she fell. *See Richardson v. Lil' River Harvesting*, 09-1090 (La.App. 3 Cir. 3/10/10), 33 So.3d 418). Golden Nugget argues that the WCJ erred in doing so because Dr. Whiddon had much less experience reading CT scans than Dr. Partington and acknowledged that when she reviewed the CT scans, she did not notice a blood clot

9

in Ms. Hodges' right transverse sinus and it was possible there was a blood clot she did not notice.

When determining the weight to be afforded a treating physician's testimony, the WCJ must also consider the physician's qualifications and the facts upon which his opinion is based; both have great bearing on this issue. *Vidrine v. Teche Elec. Supply, L.L.C.*, 08-1287 (La.App. 3 Cir. 4/1/09), 6 So.3d 1012, *writ denied*, 09-964 (La. 6/19/09), 10 So.3d 739. Dr. Whiddon thoroughly explained the basis for her diagnosis, and her reasoning and conclusion were corroborated by the interpretations of the Christus St. Patrick Hospital and Our Lady of the Lake Hospital radiologists, Dr. Martinez, and Dr. Brennan. For these reasons, we find the WCJ's assessment of the expert testimony and opinions is reasonable and supported by the evidence and, therefore, not manifestly erroneous.

### The WCJ Erred in Finding a Causal Relationship Existed between the Accident and Injuries to Katina Hodges' Left Shoulder, Right Knee, and Low-Lying Conus

Ms. Hodges sought treatment for injuries to her left shoulder, low back, right leg, and right knee that she asserts were caused or aggravated by the accident. The WCJ held that she proved these claims and held that "[t]he accident caused, aggravated, accelerated, or combined with injuries to her low back, right leg, right knee, and left shoulder." Golden Nugget asserts that Ms. Hodges' medical records and her treating physicians' testimony show that her complaints regarding these areas are not related to the accident because they either pre-existed the accident and/or because she failed to report complaints of pain in these areas for four or more months after the accident.

It has long been held that for purposes of workers' compensation, an employer takes the worker as he finds him and that an abnormally susceptible worker is entitled to the same as a healthy worker. *Fontenot v. Wal-Mart Stores,*

10

*Inc.*, 03-1570 (La.App. 3 Cir. 4/7/04), 870 So.2d 540, *writ denied*, 04-1131 (La. 6/25/04), 876 So.2d 843. Therefore, a claimant who suffers from a pre-existing medical condition is entitled to benefits if she proves that a work accident aggravated, accelerated, or combined with the pre-existing condition to produce disability for which she seeks benefits. *Sharbono v. Fire Safety Sales & Serv.*, 04-265 (La.App. 3 Cir. 9/29/04), 883 So.2d 1066, *writ denied*, 04-2661 (La. 1/28/05), 893 So.2d 73.

The medical evidence established that Ms. Hodges had a pre-existing injury to her left shoulder and that she had a congenital condition known as low-lying conus or tethered cord syndrome. Low-lying conus results when the spinal cord fails to develop normally.

Ms. Hodges saw Dr. Brett Cascio, an orthopedic surgeon, in early September 2015, complaining of left shoulder pain and right leg pain. Dr. Cascio performed surgery on Ms. Hodges' right knee to repair a torn meniscus. Based on the history Ms. Hodges related to him, Dr. Cascio opined that her complaints of her knee pain were triggered by the accident. Ms. Hodges reported to Dr. Cascio that she had injured her left shoulder while working for FedEx where she was required to lift and move packages but explained that she had increasing pain in left shoulder after the accident. Dr. Cascio also performed surgery on her left shoulder and acknowledged that the shoulder injury pre-existed the accident. He related the aggravation of her left shoulder injury to the accident and testified that a direct trauma to her shoulder could aggravate that pre-existing injury.

Due to complaints of chronic pain, Dr. Cascio referred Ms. Hodges to Dr. Billiodeaux, an anesthesiologist who specializes in pain management. Dr. Billiodeaux first saw Ms. Hodges in September 2015. Her chief complaints at that time were back pain and neck pain. At that time, he documented, among other

things, weakness in her right lower leg, abnormal gait, stiffness in her back, and painful extension of her lower back. After obtaining an MRI of Ms. Hodges' back, Dr. Billiodeaux diagnosed her as having tethered cord, also known as a low-lying conus, which occurs when the spinal cord extends further down than normal and connective tissue "tethers" the spinal cord. Dr. Billiodeaux explained that a low-lying conus "can put extensive tension on the nerve roots . . . and can be undiagnosed . . . until spontaneous or minor injury would occur." He further related that the condition can result in sensory motor deficits. Dr. Billiodeaux explained that a person with tethered cord is more susceptible to injury and that symptoms like those Ms. Hodges complained of, i.e., tingling in her right leg, instability which causes falls, pain radiating into her right hip and down her right leg, can occur spontaneously or following an injury. He opined that the accident caused Ms. Hodges' tethered cord to become symptomatic, causing her lower back pain, pain radiating down her right hip and leg, and associated sensory deficits in her right leg or "at the least" aggravated this pre-existing condition. Dr. Billiodeaux referred Ms. Hodges to Dr. Abramson for further treatment of the condition which was ultimately treated with surgery performed by Dr. Notarianni.

Dr. Brennan testified that he agreed with Drs. Cascio and Billiodeaux that the mechanics of Ms. Hudson's fall could have caused her to suffer left shoulder pain, back pain, and right leg and knee pain.

Central to the trial of this matter was the aggravation of Ms. Hodges' pre-existing left shoulder injury and her delay in seeking treatment for her complaints of pain in her back, right leg, and right knee. The parties presented extensive medical evidence on these conditions and the issue of causation. Golden Nugget argues Ms. Hodges' failure to complain of pain in the areas earlier than she did and not reporting a slip and fall on her front porch evidences that her complaints do not

12

relate to the accident. Dr. Cascio noted that he believed Ms. Hodges had some cognitive issues that may have caused the delay in her seeking treatment. He also observed that financial constraints may have been an issue. Ms. Hodges explained at trial that she did not report the slip and fall because she did not experience any new complaints of pain after it occurred.

In our view, the WCJ's opportunity to hear and see Ms. Hodges' live testimony and assess her credibility was essential to her evaluation of the totality of the evidence. Undoubtedly, the WCJ found Ms. Hodges to be credible. Based on the record before us, we cannot say that a reasonable fact finder would not accept Ms. Hodges as credible. Accordingly, we do not find that the WCJ manifestly erred in holding that a causal relationship between the accident and her complaints of pain in her left shoulder and her right knee, as well as her complaints of pain in her low back and pain and instability in her right leg, attributed to her low-lying conus.

### The WCJ Erred in Holding that the Accident Aggravated or Caused Katina Hodges' Depression

Golden Nugget contends that Ms. Hodges failed to prove that her depression was caused or aggravated by the accident. It points to the fact that she suffered from pre-existing severe depression when the accident occurred and was found to be disabled by the Social Security Administration beginning December 31, 2011. Golden Nugget cites Dr. Millin as denying that the accident aggravated her depression to support this claim.

As discussed above, Dr. Millin treated Ms. Hodges for the impact of her chronic pain on her psychological symptoms. He acknowledged that she suffered with depression for ten or eleven years before the accident but explained that a significant fall, such as the one she experienced, can aggravate pre-existing

13

depression. Dr. Millin further testified that he did not consider Ms. Hodges disabled prior to January 6, 2016, from a purely psychiatric or psychological point of view. He added that "the additional layer of chronic pain" she began suffering after the accident is "something completely different," indicating that he considered her disabled after the accident. Dr. Millin denied that if Ms. Hodges had chronic pain before the accident she was disabled prior to that time.

The medical evidence clearly shows that Ms. Hodges had severe depression before the accident; however, Dr. Millin's testimony relates an increase in her depression and associated symptoms to the severity of the chronic pain she experienced after the accident. Accordingly, we cannot say the WCJ's holding that Ms. Hodges' depression was aggravated by the accident is unreasonable.

### The WCJ Erred in Assessing Penalties Against Golden Nugget

Golden Nugget next complains that the WCJ erred in assessing it with penalties, $2,000 each for failing to pay Ms. Hodges indemnity and medical benefits. Ms. Hodges counters with the testimony of Golden Nugget's claims adjuster who testified that Ms. Hodges was not entitled to workers' compensation benefits because her fainting at worked caused the accident. *Sampson v. Avoyelles Parish School Bd.*, 11-1248 (La.App. 3 Cir. 3/7/12) 86 So.3d 118

When an employer refuses to authorize medical treatment for an eligible workers' compensation claimant, the claimant is entitled to penalties and attorney fees unless the employer reasonably controverts the claim. La.R.S. 23:1201(F); *Leonards v. Carmichael's Cashway Pharmacy, Inc*., 09-1424 (La.App. 3 Cir. 5/5/10), 38 So.3d 571, *writ denied*, 10-1738 (La. 10/29/10), 48 So.3d 1094. A claim is reasonably controverted if the employer establishes that it had "some valid reason or evidence" for denying the claim. *Trahan v. City of Crowley*, 07-266, p. 5 (La.App. 3 Cir. 10/3/07), 967 So.2d 557, 561, *writs denied*, 07-2462, 07-2471 (La.

14

2/15/08), 976 So.2d 185, 187, respectively. Penalties are stricti juris and should only be imposed when the evidence shows the employer's refusal to authorize medical treatment was without just cause and not in good faith. *Mouton v. Gulfstream Servs.*, 08-1186 (La.App. 3 Cir. 5/6/09), 11 So.3d 1135. A WCJ has great discretion when considering a claim for penalties and attorney fees. *Ducote v. La. Indus., Inc.*, 07-1536 (La.App. 3 Cir. 4/2/08), 980 So.2d 843. We will not reverse an award of penalties or attorney fees unless we determine it to be manifestly error or clearly wrong.

The WCJ awarded Ms. Hodges penalties and attorney fees because Golden Nugget failed to pay her indemnity benefits and medical benefits and failed comply with its continuing duty to investigate. Golden Nugget's claims adjuster testified that she denied the claim after being informed by Ms. Hodges' co-workers that she experienced a seizure when she fell. In *Fontenot,* 870 So.2d 540, the court rejected Golden Nugget's defense, citing our supreme court's opinion in *Guidry v. Serigny*, 378 So.2d 938 (La.1979), and reversed the trial court's denial of compensation benefits to a cook who had fallen as she walked from the storage area of a restaurant to its kitchen because the evidence showed that the claimant had fallen due to a fainting spell instead of as a result of a waxed floor. The supreme court awarded benefits, finding that the accident was the claimant's fall, regardless of what caused her to fall.

In spite of the medical evidence available immediately after the accident that diagnosed Ms. Hodges as having suffered a subarachnoid hemorrhage and Dr. Whiddon's refusal to release her to return to work until she was evaluated for hallucinations and depression that Ms. Hodges reported, Golden Nugget refused to pay Ms. Hodges workers' compensation benefits. Golden Nugget did not reconsider its position when Ms. Hodges continued to seek medical treatment

thereafter and did not seek justification for its continued denial of benefits until almost a year after the accident when it finally sought the opinions of Drs. Partington and Domingue. Under these circumstances, we cannot say that the WCJ erred in finding Golden Nugget's failure to timely pay indemnity and medical benefits was arbitrary and capricious and awarding penalties against it.

***Alternatively, the WCJ erred in awarding SEB's at $0 Earnings***

The WCJ awarded Ms. Hodges temporary total disability benefits for the period January 6, 2015, through October 11, 2015, and SEBs thereafter "based on zero earnings, until and unless she has been cleared by all of her treating physicians, not just Dr. Brett Cascio." Pointing to her work for Lofton, Golden Nugget argues that the WCJ erred in awarding Ms. Hodges SEBs but assigning her $0 in earnings.

The supreme court discussed SEBs in *Poissenot v. St. Bernard Parish Sheriff's Office*, 09-2793, pp. 4-5 (La. 1/9/11), 56 So.3d 170, 174 (alterations in original) (footnote omitted), explaining:

> "The purpose of [SEBs] is to compensate the injured employee for the wage earning capacity he has lost as a result of his accident." *Banks v. Industrial Roofing Sheet Metal Works, Inc.*, 96-2840 (La.7/1/97), 696 So.2d 551, 556. An employee is entitled to receive SEBs if he sustains a work-related injury that results in his inability to earn ninety percent (90%) or more of his average pre-injury wage. La. R.S. 23:1221(3)(a). Initially, the employee bears the burden of proving, by a preponderance of the evidence, that the injury resulted in his inability to earn that amount under the facts and circumstances of the individual case. *Banks, supra* at 556. "In determining if an injured employee has made out a prima facie case of entitlement to [SEBs], the trial court may and should take into account all those factors which might bear on an employee's ability to earn a wage." *Daigle v. Sherwin-Williams Co.*, 545 So.2d 1005, 1009 (La.1989) (quoting *Gaspard v. St. Paul Fire and Marine Ins. Co.*, 483 So.2d 1037, 1039 (La.App. 3 Cir.1985)). It is only when the employee overcomes this initial step that the burden shifts to the employer to prove, by a preponderance of the evidence, that the employee is physically able to perform a certain job and that the job was offered to the employee or that the job was available to the employee in his or

the employee's community or reasonable geographic location. La. R.S. 23:1221(3)(c)(i); *Banks, supra* at 556; *Daigle, supra* at 1009.

Ms. Hodges first argues that she is entitled to SEBs based on $0 wages because she only worked nineteen days during the period of October 12, 2015, through June 13, 2016, and she never worked full time. As discussed above, Lofton's payroll records reflect Ms. Hodges worked more than she claims; however, she did not work full time. Ms. Hodges contends that she only worked because Golden Nugget was not paying her indemnity benefits and she had no other source of income. Ms. Hodges also cites Dr. Millin's opinion that she should have been on a no-work status beginning November 18, 2015, and the fact that he never approved any of the jobs Golden Nugget's vocational rehabilitation expert submitted to him for approval as support for the WCJ's award.

Dr. Millin initially testified the Ms. Hodges could not work but later testified it was hard to deny Ms. Hodges could work if she actually was working. Furthermore, Dr. Millin testified that he does not get involved in work status assessments and disability applications and explained that if Ms. Hodges' orthopedist and neurologist approved jobs that she could perform, he would not disagree with those decisions.

The WCJ qualified the award of SEBs at $0 per week "until and unless she has been cleared by all of her treating physicians, not just Dr. Brett Cascio." By August 15, 2016, Drs. Cascio, Domingue, and Notarianni approved various jobs that Ms. Hodges could perform. Moreover, Dr. Whiddon testified that the only reason she did not release Ms. Hodges to return to work on her last visit in March 2016 was that she wanted her evaluated by a psychiatrist because of Ms. Hodges' reports of hallucinations and depression. Ms. Hodges did not return to Dr.

Billiodeaux for treatment after he referred her to Dr. Abramson and did not return to Dr. Abramson or Dr. Notarianni after she had surgery on her back.

Having considered the WCJ's rulings in light of Ms. Hodges' work from October 11, 2015, through June 2016 and the medical evidence, we find that the WCJ erred in awarding SEB's based on $0 earnings. We amend that award to award Ms. Hodges SEB's beginning October 11, 2015, based on earnings of $150 earnings per week from that date until August 15, 2016, the date on which the last of her treating physicians approved jobs that she could perform. Earnings of $150 per week are assessed after consideration of Ms. Hodges' actual weekly earnings with Lofton, which ranged from $36 per week to $360 per week and the actual hours she worked each week, which increased steadily beginning in February 2016. Ms. Hodges only worked 4.5 hours during one week in June 2016; however, she began receiving Social Security disability benefits that month. Therefore, we do not consider this as evidence that she could not continue working part-time as she had since October 2015.

Ms. Hodges also argues that she cannot work because she has continuing issues with pain and swelling in her right leg. Golden Nugget established that her physicians approved employment positions that are primarily sedentary in nature, which will allow her to make postural changes from sitting to standing and vice versa during the workday. It also presented evidence of such positions being available in Lake Charles which pay $8 - $15 per hour. Golden Nugget paid Ms. Hodges a base pay of $11.50 per hour; 90% of $11.50 is $10.35. Golden Nugget argues that because three of the cited positions pay more than $12 per hour, its obligation to pay Ms. Hodges SEBs ceased on August 15, 2016. We agree. Accordingly, Golden Nugget's obligation to pay Ms. Hodges SEBs ceased on August 15, 2016.

***The WCJ Erred in Allowing Drs. Richard Martinez and William Brennan to testify in violation of La.R.S. 23:1124.1***

Golden Nugget urges that the trial court erred in allowing Dr. Martinez and Dr. Brennan to testify at trial on behalf of Ms. Hodges because she submitted the deposition testimony of Dr. Whiddon, her treating neurosurgeon, for trial purposes and it had submitted the testimony of Drs. Partington, a neurosurgeon, and Domingue, a neurologist for trial purposes. At trial, counsel for Golden Nugget objected to the testimony of Drs. Martinez and Brennan, arguing he was not aware the doctors would testify at trial and the doctors' testimony would be cumulative. Counsel for Ms. Hodges noted these doctors were listed as witnesses on her Pre-Trial Statement. The WCJ overruled the objection and allowed the doctors to testify.

Louisiana Revised Statutes 23:1124.1 prohibits the claimant and employer from introducing "the testimony of more than two physicians where the evidence of any additional physician would be cumulative testimony." In *Carter v. Iberia Parish School Board*, 17-594, p. 11 (La.App. 3 Cir. 12/13/17), __ So.3d __, 2017 WL 6349414, another panel of this court found no error with the WCJ allowing the employer to present the testimony of more than two physicians, finding "The trial court could find this testimony provided additional perspectives necessary to aid the factfinder under La.R.S. 23:1124.1." The panel further observed that although cumulative evidence should not be allowed, it is within the trial court's discretion to decide what expert testimony it wishes to hear. The panel also explained: "While it is our duty to scrutinize trial court rulings, judgments, and factual findings, we are also mindful that an appellate court must not unduly micromanage those functions." *Id.*, pp. 11-12, __ So.3d at __.

Golden Nugget's reliance upon the opinions of Drs. Partington and Domingue, which were diametrically opposed to the opinions of Ms. Hodges' treating physicians, clearly warranted the WCJ's allowance of these witnesses live testimony. Moreover, Dr. Brennan's in-depth testimony of the head and brain more likely than not provided the WCJ a better understanding of the experts' opposing opinions regarding Ms. Hodges' CT scans. We find no error by the WCJ.

## DISPOSITION

For the reasons discussed herein, we amend the judgment in favor of Katina Hodges and against Golden Nugget to award supplemental earnings benefits for the period October 11, 2015, through August 15, 2016, based on earnings of $150 per week. The judgment is affirmed in all other respects. All costs are assessed to Golden Nugget Lake Charles, LLC.

**AMENDED AND AFFIRMED AS AMENDED.**