GUIDRY, Justice.
| ,We granted the Louisiana Department of Transportation and Development’s writ application to consider whether the Office of Workers’ Compensation hearing officer erred in requiring the vocational rehabilitation counselor to comply with the so-called Crain Brothers conditions, drafted by claimant’s counsel, before the counselor could commence or continue to provide vocational rehabilitation services to the claimant.[1] For the reasons expressed be *787 low, we hold the hearing 12officer erred in imposing these conditions ostensibly as a prophylactic measure without an evidentia-ry showing that any of the imposed conditions were reasonably necessary to resolve or rectify a “dispute ... concerning the work of the vocational counselor” as provided in La.Rev.Stat. 23:1226(B)(3)(a). Accordingly, we reverse the lower courts’ rulings, and remand the case to the Office of Workers’ Compensation.
FACTS and PROCEDURAL HISTORY
Ellis Hargrave was employed by the State of Louisiana, through the Department of Transportation and Development (hereafter “DOTD”) as a mobile machine operator. In June 2005, Mr. Hargrave was injured when he slipped and fell in the course and scope of his employment. Eventually Mr. Hargrave filed a disputed claim for compensation with the Office of Workers’ Compensation (hereafter “OWC”). Following a trial, in March 2009 the OWC rendered judgment in favor of Mr. Hargrave, awarding him inter alia temporary total disability benefits. The post-trial proceedings culminated in this court’s determination that annual leave and sick leave should not have been included in the calculation of an hourly employee’s average weekly wage for purposes of determining the appropriate workers’ compensation benefit. Hargrave v. State ex rel. DOTD, 10-1044 (La.1/19/11), 54 So.3d 1102.
While this litigation proceeded, the DOTD had commenced rehabilitation | ^services as required by statute, La.Rev. Stat. 23:1226(A).[2] The DOTD contracted with Thomas and Associates to provide Mr. Hargrave with vocational rehabilitation counseling services. Scott A. Landry, a licensed professional vocational rehabilitation counselor, commenced serving the claimant, who had undergone lumbar surgery. According to a report prepared by Mr. Landry and dated May 8, 2008, Mr. Landry had scheduled a meeting with Mr. Hargrave, his counsel, and his surgeon on *788 September 3, 2008. Mr. Landry eventually left his employment with Thomas and Associates in spring 2008 to join the United States Army. According to Mr. Har-grave’s counsel, there were no complaints with Mr. Landry’s services and Mr. Landry had agreed to abide by the so-called Crain Brothers conditions.
Mr. Hargrave’s case file was eventually transferred to Mary Lyles Adair, a licensed rehabilitation counselor who also worked for Thomas and Associates. Apparently, according to a report prepared by Ms. Adair dated November 26, 2008, Mr. Hargrave’s counsel was unable to attend the scheduled meeting on September 8, 2008, with Mr. Hargrave’s surgeon and the counselor. Ms. Adair sought to contact Mr. Hargrave and his counsel unsuccessfully on a number of occasions. According to Ms. Adair’s November 26, 2008 report, Mr. Hargrave’s counsel declined to permit the counselor to meet with him. According to Mr. Hargrave’s counsel, Ms. Adair declined to abide by any additional conditions under Crain Brothers.
Eventually, the DOTD discontinued its relationship with Thomas and | ¿Associates, and reassigned the case to Mr. Elier A. Día?, of Vocational Solutions, Inc. Mr. Diaz commenced providing services but was similarly unable to meet with Mr. Hargrave and his counsel. In June 2009, Mr. Hargrave’s counsel filed a motion to quash an upcoming meeting between Mr. Diaz and Lynn Dodge, an employee of DOTD. Apparently Mr. Hargrave’s counsel believed there had been no order appointing Mr. Diaz as the vocational rehabilitation counselor. Before a hearing on Mr. Hargrave’s motion to quash was conducted, Mr. Hargrave’s counsel sent Mr. Diaz a letter dated July 8, 2009, in which he declined to permit Mr. Diaz to provide rehabilitation counseling services to his client unless Mr. Diaz agreed to ten conditions. These conditions were as follows:
(A) That your meetings with my client be held at my office at Crowley, Louisiana.
(B) That you agree not to question my client as to any facts other than those facts necessary to provide vocational rehabilitation under LSA R.S. 23:1226.
(C) That I will be simultaneously copied on all documents sent to anyone concerning my client. This is to include correspondence, job analy-ses, and all appendices to your correspondence.
(D) That I will be a party to all oral conversations between you and the employer, insurer or their representative or attorney.
(E) That you will not subject my client to jobs which are inappropriate.
(F) That you will upon request provide your entire file for copying or provide a copy of your entire file without charge.
(G) That you understand that although you were selected by and are paid by my clients’ employer/insurer, you are dedicated to finding a job for my client which client can obtain and also continue to perform.
(H) That the purpose of the vocational rehabilitation you provide is for the benefit of my client, who is also your client.
(I) No other person has provided vocational rehabilitation in this case.
(J) That you or your firm has no connection, directly or indirectly, with my client’s employer or insurer or their agents, except that you were chosen and paid by the employer/insurer to provide vocational rehabili *789 tation in this case. [Emphasis in original letter.]
The letter provided that ‘Tour setting up and appearing for the conference with my client verifies that you are in agreement with the foregoing requests that rehabilitation services will be provided in accordance thereof.” These conditions were essentially identical to those adopted by the Third Circuit in Crain Brothers, Inc. v. Richard, 02-1342 (La.App. 3 Cir. 4/9/03), 842 So.2d 523. See Note 1, supra.
Mr. Diaz, however, apparently refused to agree to abide by the conditions in the letter. Subsequent to a July 13, 2009 hearing, the OWC hearing officer appointed Mr. Diaz as the vocational rehabilitation counselor and ordered that Mr. Diaz could continue with the scheduled conference with Lynn Dodge; a judgment to that effect was signed on July 20, 2009.
Thereafter, Mr. Hargrave filed a motion and order to compel arbitration. This motion is not in the record, but was referenced by the parties at a subsequent hearing. At some point, Mr. Diaz sought a meeting with Mr. Hargrave, but he was denied permission to do so. Consequently, the DOTD in November 2010 filed an expedited rule to show cause why an order should not be issued directing Mr. Har-grave to cooperate with the vocational rehabilitation counselor. At a hearing on February 25, 2011, the OWC hearing officer found that all ten conditions adopted in Crain Brothers were reasonable and that the vocational rehabilitation was to be conducted pursuant to the terms and conditions of Crain Brothers.
The court of appeal majority amended the OWC’s ruling to delete the condition that no other person has provided vocational rehabilitation in this case, noting that such a condition was unreasonable given that two other counselors had either provided services or attempted to do so. Hargrave v. State, 11-836 (La.App. 3 Cir. 12/21/11), 80 So.3d 1198. The court of appeal found the OWC hearing officer was not restricted by La.Rev.Stat. 23:1226 from exercising its inherent power to require that a vocational rehabilitation counselor, selected in accordance with the statute, act in accordance with the rules regulating his professional conduct to insure integrity, honesty and fair dealing in rendering the services prescribed. The 16court of appeal noted that the Crain Brothers conditions had been upheld by other courts, though with the caveat that they are not mandatory in every case, nor should the OWC hearing officer deem them necessary in every case.
We granted the DOTD’s writ application to determine the correctness of the lower courts’ rulings. Hargrave v. State, 12-0341 (La.5/4/12), 88 So.3d 469.
LAW AND LEGISLATION
As is obvious from the above recitation of the facts and history of this case, the issue presented to us originated in Crain Brothers. In that case, counsel for the claimant, the same counsel for Mr. Har-grave here, proposed ten conditions before the rehabilitation counselor could meet with his client. The counselor refused, so the employer filed a motion to compel vocational rehabilitation. The hearing officer ordered the counselor to meet with the claimant, and additionally found the conditions drafted by the claimant’s counsel to be reasonable. Although the employer argued that these conditions expanded the rules established in La.Rev.Stat. 23:1226 by allowing the claimant to set forth conditions for the meeting, the Crain Brothers court disagreed, noting that La.Rev.Stat. 23:1226, taken in its entirety, does not restrict the OWC from exercising its inherent power to require that the vocational rehabilitation counselor, selected pursuant to statute, act in accordance with the rules *790 regulating his professional conduct to assure integrity, honesty, and fair dealing in rendering the services prescribed. Id., p. 3, 842 So.2d at 525-26. The court of appeal further found no manifest error in the OWC’s conclusion that the conditions were reasonable. Id., 842 So.2d at 526.
As Mr. Hargrave now argues, the claimant’s actions proposing the |7conditions in the Crain Brothers case were intended, and apparently approved by the appellate court, as a reasonable response to the history of so-called “sham rehabilitation” cases in the 1980s and 1990s. Mr. Har-grave cites a number of cases exemplifying what he describes as the inherent conflict present when the employer or insurer selects and hires the vocational rehabilitation counselor, who then feels responsible to the party paying him, even though the claimant is owed a duty by the counselor as his client for the purposes of providing vocational rehabilitation services. See, e.g., City of Crowley v. Comeaux, 93-1116 (La.App. 3 Cir. 4/6/94), 638 So.2d 658, writ denied, 94-1184 (La.6/24/94), 640 So.2d 1355; Maxie v. Brown Industries, Inc., 95-19 (La.App. 3 Cir. 5/31/95), 657 So.2d 443, writ denied, 95-1630 (La.10/6/95), 661 So.2d 469; Livings v. Langston Companies, Inc./Continental Bag Div., 96-636 (La.App. 3 Cir. 12/5/96), 685 So.2d 405.
Since Crain Brothers, however, the legislature has made several amendments to La.Rev.Stat. 23:1226. Prior to the amendment in 2003, La.Rev.Stat. 23:1226 merely provided that the injured employee was entitled to prompt rehabilitation services and that the employee could bring a claim for vocational rehabilitation services if the employer refused to provide them. However, the statute was amended in 2003 and 2005, so that La.Rev.Stat. 23:1226(B)(3)(a) now provides as follows:
The employer shall be responsible for the selection of a licensed professional vocational rehabilitation counselor to evaluate and assist the employee in his job placement or vocational training. Should the employer refuse to provide these services, or a dispute arises concerning the work of the vocational counselor, the employee may file a claim with the office to review the need for such services or the quality of services being provided. The procedure for hearing such claims shall be expedited as provided in R.S. 23:1124.
The 2003 amendment therefore allowed the employee to file a claim with |sthe OWC to review the “quality of services being provided” if “a dispute arises concerning the work of the vocational counselor. ...” Acts 2003, No. 980. The 2003 amendment also added paragraphs 3(b) and 3(c) to grant the counselor limited immunity from tort and to allow the employer to compel the employee’s cooperation in the rehabilitation process. If the employee refuses to accept rehabilitation as deemed necessary by the OWC, he shall be subject to a fifty percent reduction in weekly compensation for each week of the period of refusal. La.Rev. Stat. 23:1226(B)(3)(c). The 2005 amendment mandated the counselor be a licensed professional vocational rehabilitation counselor. Acts 2004, No. 257. Thus, the legislature clearly recognized a right of the employee to challenge the quality of the vocational rehabilitation services and, consequently, set forth a procedure for resolving any disputes concerning the work of the vocational rehabilitation counselor.
Since the legislative amendments, Crain Brothers has been met with mixed reactions by the appellate courts. The Third Circuit, as in the instant case, has generally approved of the imposition of the Crain Brothers conditions upon the vocational rehabilitation counselor, finding no manifest *791 error in the hearing officer’s determination of reasonableness without regard to a particular showing by the claimant that there is any dispute concerning the quality of the counselor’s work or a deficiency therein. See, e.g., Moody v. Abrom Kaplan Memorial Hospital, 05-527 (La.App. 8 Cir. 12/80/05), 918 So.2d 1203, writ denied, 06-0197 (La.4/24/06), 926 So.2d 548; Luquette v. Clayborn Self, 05-1367 (La.App. 3 Cir. 5/3/06), 929 So.2d 817, writ denied, 06-1311 (La.9/22/06), 937 So.2d 385.
Other circuits have been more circumspect with regard to the Crain Brothers conditions. In Anderson v. Eckerd Corp., 05-1381 (La.App. 1 Cir, 6/21/06), 939 So.2d 386, writ denied, 06-1849 (La.10/27/06), 939 So.2d 1283, the vocational rehabilitation counselor refused to sign a similar agreement presented to him by the claimant’s counsel requiring him to abide by the Crain Brothers conditions. The OWC hearing officer deemed rehabilitation services were necessary and that the claimant had unreasonably refused to accept rehabilitation services, subjecting him to the fifty percent reduction in weekly benefits. The First Circuit affirmed the hearing officer’s determination that the services were necessary and that the claimant had refused them. The court further found no error in the hearing officer’s reduction of benefits until the claimant cooperates with vocational rehabilitation services, citing evidence that the claimant’s attorney had prevented the meeting between the counselor and the claimant’s surgeon, a meeting to which the claimant and his attorney were invited to attend. The court noted: “Nothing in [La.Rev.Stat. 23:1226] prevents a reduction in benefits as presented under the facts of this case and, in fact, said reduction helps to accomplish the stated goal of rehabilitation services to return a disabled worker to work as soon as possible.” Id., p. 9, 939 So.2d at 390.
In Mendoza v. Leon’s Plumbing Company, 04-0189 (La.App. 4 Cir. 12/22/04), 892 So.2d 600, the Fourth Circuit similarly found unreasonable the requirement that the rehabilitation counselor agree to the Crain Brothers conditions before commencing rehabilitation services, but declined to hold the claimant liable for a reduction in benefits. There, the employer selected a licensed professional rehabilitation counselor to provide services to the claimant, but the claimant’s attorney sent a letter agreement to the counselor requiring her to agree to abide by the Crain Brothers conditions therein. The counsel- or declined to do so, noting that it was tantamount to a contract between the parties. The employer sought to compel the claimant to cooperate. The OWC hearing officer concluded that all but three of the | mconditions were reasonable and that the claimant had not refused rehabilitation services. The court of appeal agreed that some of the conditions were unreasonable, and went further to find additional conditions unreasonable under the facts of the case. The court thus concluded that the letter agreement itself was unreasonable, as it effectively created a binding contract governing the relationship between the counselor and the claimant, and, furthermore, constituted a refusal of treatment and a failure to participate in vocation rehabilitation. Id., p. 10, 892 So.2d at 607. Nevertheless, the court of appeal found no manifest error in the hearing officer’s determination that the claimant’s acts did not constitute obstruction to and refusal of vocational rehabilitation in that case, given the claimant’s attempt to reasonably rely on Crain Brothers. Id., pp. 10-11, 892 So.2d at 607.
In Interiano v. Fernando Pastrana Const., 04-430 (La.App. 5 Cir. 10/26/04), 887 So.2d 547, the Fifth Circuit found no error in the OWC hearing officer’s ruling ordering the claimant to cooperate in voca *792 tional rehabilitation services but declining to require the counselor to agree to abide by the Crain Brothers conditions before commencing to provide such services. There, the claimant’s attorney presented the properly selected vocational rehabilitation counselor with a letter agreement outlining the ten conditions adopted in Crain Brothers that would govern the relationship between the claimant and the vocational counselor. The counselor declined to sign the agreement, and no services were commenced. The employer moved to reduce the claimant’s benefits for failure to cooperate with vocational rehabilitation. The employer argued that the statute governing vocational rehabilitation, La.Rev. Stat. 28:1226, does not require a vocational rehabilitation counselor to agree to certain terms prior to ^performing rehabilitation services, but instead, the employee may file a claim with the OWC, under La.Rev. Stat. 28:1226(B)(3)(a.), if a dispute arises regarding the quality of the services of the vocational counselor or the necessity for such services.
At the conclusion of the hearing, the OWC hearing officer stated in pertinent part:
.... [T]here is no indication that the vocational rehabilitation services are not needed. And there’s also no indication at this time, since she has not performed the services, as to whether or not her performance of these duties are appropriate or inappropriate. It’s premature for us to even consider that at this point in time. The court is not going to render a decision based on speculation as to how the vocational rehabilitation counselor will do her job. The court is going to assume that she does it appropriately. If not, then defendant has all rights— claimant has all rights reserved to them to pursue this matter at that point in time. But at this point in time the parties will proceed as indicated. If in fact the claimant does not cooperate with the vocational rehabilitation efforts, then the court will consider at that time to reduce her [sic] benefits accordingly in accordance with the statute.
Id., 887 So.2d at 548.
On appeal, the Fifth Circuit affirmed and stated:
LSA-R.S. 28:1226 does not require a vocational counselor to agree to certain conditions prior to providing vocational rehabilitation services. Rather, LSA-R.S. 23:1226(B)(3)(a) provides that the employee may file a claim with the Office of Worker’s Compensation if a dispute arises regarding the quality of the services of the vocational counselor or the necessity for such services. (Emphasis added.) Further, the Third Circuit’s decision in Crain, which is persuasive but not binding on this Court, does not require the vocational counselor to agree to certain terms prior to the performance of rehabilitation services.
Id., pp. 4-5, 887 So.2d at 549.
ANALYSIS
Keeping in mind the recent legislative amendments to La.Rev.Stat. 23:1226 and the jurisprudence interpreting La.Rev. Stat. 23:1226 before and after, we turn to the issues presented in this case. Here, the claimant | ^presented to the licensed professional vocational rehabilitation counselor, properly appointed by the hearing officer, a letter agreement by which the counselor would agree to abide by ten conditions, similar to those set forth in Crain Brothers, prior to the commencement of services. The vocational rehabilitation counselor declined to agree to the terms in the claimant’s letter; consequently, the employer sought to compel cooperation in vocational rehabilitation.
At the hearing, the only evidence introduced into the record comprised of two *793 exhibits: one exhibit was the Rules of Professional Conduct for Licensed Professional Rehabilitation Counselors, while the other consisted of the letter agreement dated July 8, 2009. The only other information about what transpired between the parties consisted of argument of counsel. Mr. Hargrave’s counsel stated as follows: there is a history of “sham rehabilitation” in the circuit; the Crain Brothers conditions were a response thereto; the rehabilitation counselor has divided loyalties, given that he is paid by the employer and even though his counseling client is the claimant; the conditions in the letter are to insure fair dealing; the counselor and the attorney for the employer met for a period of time prior to the hearing; and the counselor in this case, Mr. Diaz, was dismissed from another case when he refused to provide a report to the claimant’s counsel in that case. In his brief to this court, Mr. Hargrave cites other cases in which allegedly the same counselor as here indicated that his loyalty may have been owed to the employer or insurer paying for his services rather than the claimant. Mr. Diaz was not called to testify, and there is no indication he retains that view at the present time. However, none of this is admissible evidence on which the hearing officer could have reasonably found that there is an actual dispute concerning the rehabilitation services and the | ^quality thereof, or that imposition of any of these conditions, or any other reasonably tailored condition, would resolve or rectify the dispute.
Accordingly, we conclude the hearing officer manifestly erred in determining that the conditions set forth in the letter agreement were reasonable or necessary. La.Rev.Stat. 23:1226(B)(3)(a) sets forth a procedure by which an employee may file a claim with the Office of Workers’ Compensation if a dispute arises regarding the quality of the services of the vocational counselor or the necessity for such services. As the Interiano court reasoned, there is no requirement in La.Rev.Stat. 23:1226 that a vocational rehabilitation counselor must agree to certain conditions prior to providing vocational rehabilitation services. Certainly absent any showing by the claimant that there is an actual dispute as to the provision of services or the quality thereof, requiring the counselor to abide by such conditions, even if intended as a prophylactic measure, necessarily resorts to speculation and conjecture as to the future actions of the counselor. Accordingly, the OWC hearing officer and the court of appeal erred in requiring the vocational rehabilitation counselor to agree to certain conditions prior to the performance of rehabilitation services in the absence of an evidentiary showing that there was an actual dispute as to the quality of the services of the vocational rehabilitation counselor or the necessity for such services.
CONCLUSION
For the reasons set forth above, we find the Office of Workers’ Compensation hearing officer erred in requiring the vocational rehabilitation counselor to comply with certain conditions before the counselor could commence or continue to provide vocational rehabilitation services to the claimant. We thus hold the hearing officer erred in imposing these | conditions without an evidentiary showing that any of the conditions were reasonably necessary to resolve or rectify a “dispute ... concerning the work of the vocational counselor” as provided in La.Rev.Stat. 23:1226(B)(3)(a). Accordingly, we reverse the lower courts’ rulings, and remand the case to the Office of Workers’ Compensation.
REVERSED AND REMANDED
KNOLL, J., additionally concurs with reasons.

. In Crain Brothers Inc. v. Richard, 02-1342 pp. 2-3 (La.App. 3 Cir. 4/9/03), 842 So.2d 523, 524-25, the appellate court ratified ten conditions imposed on the vocational rehabilitation counselor by the hearing officer at the request of the claimant’s counsel. They were as follows:
(A) That your meetings with my client be held at my office at Crowley, Louisiana.
(B) That you agree not to question my client as to any facts other than those facts *787 necessaiy to provide vocational rehabilitation under LSA R.S. 23:1226.
(C) That I will be simultaneously copied on all documents sent to anyone concerning my client. This is to include correspondence, job analyses, and all appendices to your correspondence.
(D) That I will be a party to all oral conversations between you and the employer, insurer or their representative or attorney. (There will be no secret conversations between yourself and the employer or insurer or their representatives.)
(E) That you will not subject my client to jobs which are inappropriate.
(F) That you will upon request provide your entire file for copying or provide a copy of your entire file without charge.
(G) That you understand that although you were selected by and are paid by my clients’ employer/insurer, you are dedicated to finding a job for my client which client can obtain and also continue to perform.
(H) That the purpose of the vocational rehabilitation you provide is for the benefit of my client, who is also your client.
(I) No other person has provided vocational rehabilitation in this case.
(J) That you or your firm has no connection, directly or indirectly, with my client's employer or insurer or their agents, except that you were chosen and paid by the employer/insurer to provide vocational rehabilitation in this case. [Emphasis in original.]

. La.Rev.Stat. 23:1226(A) provides:
A. When an employee has suffered an injury covered by this Chapter which precludes the employee from earning wages equal to wages earned prior to the injury, the employee shall be entitled to prompt rehabilitation services. Vocational rehabilitation services shall be provided by a licensed professional vocational rehabilitation counselor, and all such services provided shall be compliant with the Code of Professional Ethics for Licensed Rehabilitation Counselors as established by R.S. 37:3441 et seq.