STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

18-501


RONALD NERO

VERSUS

ALLIED WASTE SERVICES, ET AL.


**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 04
PARISH OF ACADIA, NO. 09-01854
SHARON MORROW, WORKERS' COMPENSATION JUDGE

**********

SHANNON J. GREMILLION
JUDGE

**********

Court composed of Sylvia R. Cooks, Shannon J. Gremillion, and Phyllis M. Keaty, Judges.


**JUDGMENT AFFIRMED. MOTION FOR SANCTIONS DENIED.**


Michael B. Miller
Jacqueline K. Becker
Miller & Associates
P. O. Drawer 1630
Crowley, LA 70527-1630
(337) 785-9500
COUNSEL FOR PLAINTIFF/APPELLANT:
       Ronald Nero

**James R. Raines**
**Joseph J. Cefalu, III**
**Kelsey A. Clark**
**Breazeale, Sachse & Wilson, LLP**
**P. O. Box 3197**
**Baton Rouge, LA 70821-3197**
**(225) 387-4000**
**COUNSEL FOR DEFENDANT/APPELLEE/CROSS-APPELLANT:**
    BFI Waste Services, LLC, d/b/a Allied Waste Services of Acadiana-
    Scott

**GREMILLION, Judge.**

In this protracted workers' compensation case, Mr. Ronald Nero appeals the judgment of the Workers' Compensation Judge (WCJ) that modified his 2010 workers' compensation award from temporary total disability (TTD) to supplemental earnings benefits (SEBs) and reduced the award by fifty percent retroactive to March 14, 2016 for his refusal to submit to vocational rehabilitation services. The employer answered the appeal and seeks forfeiture of benefits pursuant to La.R.S. 23:1208, restitution of all benefits paid after December 9, 2016 (the date of the hearing at issue), and sanctions against Mr. Nero's attorney. For the reasons that follow, we affirm the WCJ's judgment and deny the employer's motion for sanctions.

## FACTS AND PROCEDURAL POSTURE

Mr. Nero was employed by Appellee, BFI Waste Services, LLC, d/b/a Allied Waste Services of Acadiana-Scott (Allied) as a driver. On February 15, 2008, Mr. Nero was injured when he was struck by a car while crossing a road on foot. Following the accident, Mr. Nero was treated by, among other physicians, Dr. Michael Holland, an orthopedic surgeon chosen by Mr. Nero. Dr. Holland opined on May 20, 2009, that Mr. Nero had reached maximum medical improvement (MMI) and could return to medium duty work. This opinion reinforced the opinion derived from a functional capacity evaluation Mr. Nero underwent in March 2009. Dr. Douglas Bernard, an orthopedic surgeon who saw Mr. Nero at the behest of Allied, reached the same conclusion. Nevertheless, on June 9, 2010, the WCJ awarded Mr. Nero weekly compensation indemnity of $522.00 per week on the basis of TTD status.[1]

_____

[1] Allied disputes whether this award was in the nature of TTD.

In late October 2014, Ms. Susan Davidson, a vocational rehabilitation counselor retained by Allied's insurer, wrote Mr. Nero's counsel advising of her retainer and requesting dates on which she could interview Mr. Nero for the purpose of providing vocational rehabilitation services to him and advising him that Allied wanted Mr. Nero re-evaluated by Dr. Holland. Mr. Nero's attorney wrote back on November 3, 2014 and asked her to complete a form containing thirteen questions or conditions and asking whether she would agree to abide by them.[2] Ms. Davidson wrote back and advised that she was bound by the Code of Professional Ethics for Licensed Vocational Rehabilitation Counselors and was not required to agree to the terms of the form. Mr. Nero's attorney then wrote back and advised that Ms. Davidson was not required to agree to the terms, but, until she did, she would not be allowed to interview Mr. Nero, and Mr. Nero would not return to see Dr. Holland.

Allied responded by filing a "Motion to Compel Vocational Rehabilitation and Medical Examinations and to Suspend and Reduce Benefits, and for Sanctions." Mr. Nero filed a "Motion and Order for Penalties and Attorneys Fees," in which he alleged that, on February 21, 2015, Allied had reduced his weekly indemnity from $522.00 per week to $261.00 per week (fifty percent); that on June 27, 2015, the benefits were again reduced to $186.43 per week; that on July 2, 2015, indemnity was terminated; and that on July 14, 2015, his medical treatment benefits were terminated. Mr. Nero requested attorney fees and penalties for these actions. Allied then filed an exception arguing that Mr. Nero's latest motion was an unauthorized

---

[2] The form set forth the so-called *Crain Brothers* conditions, which were approved by a panel of this court in *Crain Brothers, Inc. v. Richard*, 02-1342 (La.App. 3 Cir. 4/9/03), 842 So.2d 523. These conditions, as will be discussed, were rejected as a precedent to initiating vocational rehabilitation services in *Hargrave v. State*, 12-341 (La. 10/16/12), 100 So.3d 786. The form purported to have been issued by Mr. Nero himself, but was replete with references to "my client," indicating that the conditions were not keeping Mr. Nero informed or copied with correspondence, but with keeping his attorney informed and copied on all correspondence, including correspondence to and from Allied's attorney.

attempt to utilize summary process to litigate a matter that should only be tried by ordinary process. On February 12, 2016, the WCJ heard Mr. Nero's motion and, on March 7, 2016, awarded Mr. Nero penalties and attorney fees.

On February 16, 2016, Mr. Nero filed a "Motion to Review the Need for and Quality of Services Provided by Defendants for Vocational Rehabilitation Services," in which he alleged that no vocational rehabilitation counselor had provided services to him and that Allied had not demonstrated a need for such services. In his prayer, Mr. Nero requested that Ms. Davidson be removed or be ordered to "comply with reasonable conditions to assure adherence to [La.R.S.] 23:1226." On March 16, 2016, Allied filed an amended motion to modify the 2010 judgment to reduce or terminate Mr. Nero's benefits on the bases of his refusal to submit to medical examination with Dr. Holland, his refusal to participate in vocational rehabilitation, and the fact that he had been released to return to work. These motions were heard on December 9, 2016, and the WCJ ruled on December 14, 2017 as follows (record references omitted):

> For all of the contentiousness of the parties, the evidentiary record was decidedly lacking. Allied Waste Services introduced various letters regarding vocational rehabilitation attempts, the records of Dr. Michael Holland, the treating orthopedic surgeon, the Functional Capacity Evaluation ordered by Dr. Holland that took place March 17-18, 2014, reports from Dr. Douglas Bernard, the employer's choice of physician, and multiple Facebook posts that were received as impeachment evidence. Nero introduced 3 exhibits. Plaintiff exhibit 1 is a copy of the Defendant's Amended Motion to Modify Judgment to Retroactively Reduce, Suspend and/or Terminate Benefits, and for Sanctions. Plaintiff exhibit 2 is a copy of Answers to Plaintiff's Third Set of Interrogatories. Plaintiff exhibit 3 is a copy of the June 2010 judgment. An affidavit by the adjuster was not received except as a Proffer, and subsequently the deposition of the adjuster, Evelyn Crawford, was introduced in place of the affidavit. Plaintiff's counsel was not allowed to question Susan Davidson, the employer's choice of vocational counselor, beyond her actual activities on the file and plaintiff's counsel was given the opportunity to offer her proffered testimony either via deposition or subsequent courtroom availability, but neither option was provided to this office, and therefore that proffered testimony has not been received into the record. The

attorneys and WCJ did discuss the submission of the records of Dr. Neal J. Duhon of Acadiana Family Medical Associates, and those records were received under 5 separate face sheets (not all technically certifications). No one submitted the records of Dr. Korim, a neurologist, or the records of Dr. Bowie, a urologist, who saw him for potential kidney issues. Some of the reports of those physicians can be found in the records of Dr. Duhon[.]

Essentially, while Nero had extremely serious contusions and abrasions after his accident, the only surgery required was an arthroscope for the right knee. Pain in his shoulder resolved on its own. A disc herniation was seen on MRI but with no compression on any nerves and associated with no narrowing and no treatment was identified as necessary for that condition. Dr. Holland released him to medium duty as of May 20, 2009. Dr. Duhon re-certified him for his CDL[3] as of January 8, 2009. There has been no treatment with either Dr. Korim or Dr. Bowie since 2009-2010. The adjuster testified that no medical treatment for Nero has been refused or not approved. She testified that she has not received a request for treatment with Dr. Hodges.

Dr. Duhon's records reflect that Nero is treated for erectile dysfunction, hip pain, anxiety, BPH[4], chronic low back pain, Type 2 diabetes, HTN[5], mixed hyperlipidemia, acute alcoholic hepatitis, hyperlipidemia, obesity, CAD[6] and carotid artery stenosis, without cerebral infarction. Nero has been treating with Dr. Duhon as his family physician for many years, being seen on about a quarterly basis for some of these health conditions before the accident of 2008. The list referred to from February 29, 2016 is referred to because it is typed, not handwritten, so easier to understand. The WCJ found no work restriction from Dr. Duhon for the complaints from the work accident. In fact, the only disability opinion is Dr. Holland's medium duty restriction from May 2009.

With respect to the allegations by both parties regarding the provision of vocational rehabilitation services, Allied's exhibits 1-10 document the attempts of Susan Davidson to provide vocational services. She also testified to these contacts and a telephone conference she had with Nero's counsel. Nero's counsel refused to schedule a vocational interview until she agreed to his conditions. This issue has been ruled upon and is settled law. Ms. Davidson had no obligation to agree to the request of plaintiff's counsel.

Nero's counsel demonstrated no irregularity of any sort to justify withholding his client from an initial vocational evaluation. Nero's counsel was offered the opportunity to cross examine Ms. Davidson at a later time, either via deposition or additional court time scheduled

---

3 Commercial Driver's License
4 Benign Prostatic Hyperplasia
5 Hypertension
6 Coronary Arteria Disease

(without the presence of the WCJ) but nothing was proffered. All the evidence available on vocational rehabilitation is the exhibits of Allied and the testimony in the record from Ms. Davidson.

Based upon the actual evidence in hand, as briefly summarized above, and due to the lack of other evidence, the WCJ finds as follows:

o Nero's request for penalties and attorney fees based upon the alleged failure of the employer to provide certain medical treatment is denied. Those sanctions are only due after written request, and there is no evidence that Nero made written request upon Allied for additional treatment with any of his doctors or written request for treatment with Dr. Hodges, a new doctor.
o Nero's Motion to Review the Need For and Quality of vocational services is denied.
o Any request for treatment with Dr. Hodges is denied as there is no evidence that such treatment is medically necessary. Nero has not seen the physicians previously approved for treatment in a period in excess of 5 years and it appears that Dr. Duhon has a handle on all of his medications and medical issues.
o With respect to treatment with Dr. Korim and/or Dr. Duhon, there is no evidence that treatment was ever denied, except through Nero's self-serving and not credible testimony.
o Allied's request for a Preliminary Determination hearing pursuant to 23:1201.1 is denied as Allied did not establish compliance with 23:1201.1(A) through (E) as required by 23:1201.1(I)(1).
o Allied's request for Modification of the Judgment is granted both to set disability status at Supplemental Earnings Benefits status, payable according to law, and to reduce Nero's benefits by 50% from the date of the filing of the Motion to Modify Judgment or March 14, 2016,pursuant to 23:1226(B)(3)(c).

As a final comment, the WCJ needs to mention that Nero was not a credible witness. The cross examination and impeachment by defense counsel was well done and Nero attempted to evade answering any number of questions. The WCJ made contemporaneous notes of Nero moving forward and back freely while in the witness chair. The WCJ believes he almost reached the standpoint of violation of 23:1208 while on the stand, but it fits more comfortably as a credibility assessment. While there is no question that Nero suffered a significant event, he recovered quite well with very little lasting damage, as demonstrated, in part, by Dr. Duhon's re-certification of his CDL license approximately 11 months after the accident and Dr. Holland's release 15 months post-injury. He was very fortunate. However, the defendant's reliance solely on the opinion of their own doctor, Dr. Bernard, is not sufficient to establish an ability to return to his old job, and certainly doesn't establish the availability of that job, or any other job. Claimant has obstructed vocational rehabilitation, but still some evidence of job availability is necessary to completely terminate

benefits. The current evidence is not sufficient to relieve Allied from payment of supplemental earnings benefits.

Mr. Nero appeals this ruling. Allied answered the appeal and asserts that the WCJ erred in not terminating Mr. Nero's SEBs retroactive to June 23, 2015, the last date on which Mr. Nero was cleared to return to work, that the WCJ erred in not imposing sanctions against Mr. Nero's attorney for his attempts to thwart the vocational rehabilitation process, and that the WCJ erred in finding that Mr. Nero did not commit fraud pursuant to La.R.S. 23:1208. We will first address Mr. Nero's assignments of error.

## ASSIGNMENTS OF ERROR

Mr. Nero assigns as error:

1. The workers' compensation judge erred in changing Mr. Nero's weekly indemnity benefits to supplemental earnings benefits.

2. The workers' compensation judge erred in failing to grant the motion to review the quality of services of the vocational counselor.

3. The workers' compensation judge legally erred in sustaining objections raised by Allied Waste to questions that were relevant to the issues at the hearing.

4. The workers' compensation judge erred in ordering Mr. Nero's weekly benefits reduced by 50% for failure to cooperate with vocational rehabilitation.

## ANALYSIS

*Modification of the compensation award*

Louisiana Revised Statutes 23:1310.8(B) provides for the continuing jurisdiction of the WCJ to review and modify a compensation award:

> Upon the motion of any party in interest, on the ground of a change in conditions, the workers' compensation judge may, after a contradictory hearing, review any award, and, on such review, may make an award ending, diminishing, or increasing the compensation previously awarded, subject to the maximum or minimum provided in the Workers' Compensation Act, and shall state his conclusions of fact and rulings of law, and the assistant secretary shall immediately send to the parties a copy of the award.

Mr. Nero argues:

> To satisfy LSA R.S. 23:1310.8 in this case, the employer must show that there has been an improvement in Mr. Nero's condition since the 2010 judgment. The burden of proof is on Allied Waste. Mr. Nero has no burden until his employer proves that there has been a change in Mr. Nero's physical condition since the 2010 judgment. Furthermore, there must be a significant change, Jackson [*v. Iberia Parish Gov't*, 01-925 (La.App. 3 Cir. 3/20/02), 813 So.2d 589, *writ denied*, 02-1075 (La. 6/14/02), 817 So.2d 1159]. Even if the original judg[ment] in this case was incorrectly granted, that fact will not provide a basis to show a change in conditions. Allied Waste would either have to allege and prove fraud to relitigate the 2010 judgment, Truitt [*v. Temp Staffers*, 04-590 (La.App. 1 Cir. 4/6/05), 915 So.2d 786, *writ denied*, 05-1162 (La. 6/24/05), 904 So.2d 742]. Allied Waste has done neither.

We disagree with Mr. Nero's contentions. This court recently visited the burden of proof required by La.R.S. 23:1310.8 in *Mouton v. Walgreen Co.*, 17-1025 (La.App. 3 Cir. 5/2/18), 246 So.3d 590, *writ denied*, 18-1147 (La. 10/15/18), 253 So.3d 1297. In *Mouton*, the WCJ granted a motion to modify an award of TTD benefits, and the plaintiff, as in this case, argued that the employer had not carried its burden of proof. In a scholarly analysis, the *Mouton* panel discussed the interplay between La.R.S. 23:1310.8 and La.R.S. 23:1221, which governs the award of compensation:

> Louisiana Revised Statutes 23:1221(1)(a) provides that "[f]or any injury producing temporary total disability of an employee to engage in any self-employment or occupation for wages," the injured employee shall receive TTDs "during the period of such disability." The statute provides, however, that such benefits "shall cease when the physical condition of the employee has resolved itself to the point that a reasonably reliable determination of the extent of disability of the employee may be made and the employee's physical condition has improved to the point that continued, regular treatment by a physician is not required." La.R.S. 23:1221(1)(d). "Upon reaching maximum medical improvement, an injured worker who is able to return to work, even in pain, is no longer eligible for TTD benefits, but instead is relegated to SEB benefits if he is unable to earn 90% of his pre-accident wages." [*Numa C. Hero & Son v. Leleux*, 15-305 (La.App. 3 Cir. 10/28/15), 178 So.3d 595,] 600. Nevertheless, the right to receive SEBs "shall in no event exceed a maximum of five hundred twenty weeks, but shall terminate." La.R.S. 23:1221(3)(d). . . .
>
> . . . .

7

Claimant submits that Walgreens must show that her condition has improved since the original judgment was rendered. She contends that her having reached MMI is not a "change in condition" sufficient to allow Walgreens to modify her benefits under La.R.S. 23:1310.8 and that the February 23, 2017 hearing "was nothing more than a retrial of the 2007 trial with the same evidence, but a different workers' compensation judge." Claimant points out that the evidence shows that she continues to treat with Dr. Hodges and that as late as January 2017, she was referred to a Dr. Joseph Gillespie for C–Facet Injections. Moreover, Claimant insists that her being at MMI demonstrates that her condition has worsened, not improved.

Claimant's belief that Walgreens had to show an improvement in her condition is dispelled by the language of La.R.S. 23:1310.8(B) which allows a WCJ to "make an award ending, diminishing, or increasing the compensation previously awarded." Because the legislature provided a mechanism for a WCJ to increase the amount of compensation to a claimant, it must have contemplated situations where a claimant's condition would have diminished so as to entitle that claimant to a higher amount of compensation.

. . . .

"[W]hen the claimant no longer requires treatment and his physical condition has stabilized, an award for TTD benefits is no longer appropriate and a determination regarding the extent of the Claimant's disability must be made." *Numa Hero*, 178 So.3d at 600 (quoting *Navarre v. K–Mart,* 01-753, p. 6 (La.App. 5 Cir. 11/27/01), 803 So.2d 206, 209). Here, the medical evidence reveals that Claimant's condition has stabilized, which was not the case when the original judgment was rendered in 2007. Although she continues to receive pain management, which includes medications and facet joint injections, we note that the WCJ in *Numa Hero* modified the benefits of the claimant from TTDs to SEBs where his "condition [w]as no longer 'temporary' but had plateaued into a chronic pain situation ... treated with regular 3[-]month visits to Dr. Hodges." *Id.*

*Mouton*, 246 So.3d at 593-96(footnote omitted). As the reasons given by the WCJ in the present matter clearly establishes, the same situation is present in this matter. Mr. Nero's condition has clearly stabilized, and, unlike the claimant in *Mouton*, he no longer requires treatment, which makes him no longer eligible for TTD benefits. *See* La.R.S. 23:1221(1)(d). "Temporary total disability" literally means the disability is *temporary*; once the condition is no longer temporary or no longer a

disability, a change in conditions has occurred. *See Numa C. Hero & Son*, 178 So.3d 595. This assignment of error lacks merit.

*Mr. Nero's motion to review the quality of vocational rehabilitation services*

The Louisiana Legislature has enacted measures to ensure that injured workers are returned to the workforce with deliberate expedition. Among these measures is La.R.S. 23:1226, entitled, "Rehabilitation of injured employees." An injured employee is entitled to vocational rehabilitation services from a licensed vocational rehabilitation counselor approved by the Office of Workers' Compensation. La.R.S. 23:1226(A) and (B)(2). These services must be rendered in accordance with the Code of Professional Ethics for Licensed Rehabilitation Counselors (the Code).[7] *Id.* These services are the responsibility of the employer to procure. La.R.S. 23:1226(B)(3)(a).

> Should the employer refuse to provide these services, or a dispute arises concerning the work of the vocational counselor, the employee may file a claim with the office to review the need for such services or the quality of services being provided. The employee shall have a right to an expedited summary proceeding pursuant to R.S. 23:1201.1(K)(8).

*Id.* Ordinarily, one might assume that the employee seeking to review the need for vocational rehabilitation services is asking that the employer provide those services, not avoid them; such is not the case here. And the legislature has made provision for employees who seek to thwart the vocational rehabilitation process:

> Upon refusal by the employee, the employer or payor may reduce weekly compensation, including supplemental earnings benefits pursuant to R.S. 23:1221(3), by fifty percent for each week of the period of refusal. Reduction of benefits by the employer or payor shall be made in accordance with the provisions of R.S. 23:1201.1(A) through (E).

La.R.S. 23:1226(B)(3)(c). In the present matter, Allied reduced and terminated Mr. Nero's benefits; however, it failed to do so in accordance with La.R.S. 23:1201.1(A)

---

[7] The code may be found at La.Admin.Code 46:LXXXVI.1600-1611.

through (E), which resulted in it being assessed with penalties and attorney fees. It thereafter filed its motion for a preliminary determination and to reduce and terminate Mr. Nero's benefits.

The imposition of "conditions" under which an employee seeks to control the vocational rehabilitation process has occupied the attention of this court for too long. In *Crain Brothers,* 842 So.2d 523, a panel of this court endorsed a list of such conditions, all of which Mr. Nero sought to impose on Ms. Davidson's services, and then some.

However, the Louisiana Supreme Court, in *Hargrave v. State*, 12-341 (La. 10/16/12), 100 So.3d 786, reviewed a decision of this court that again endorsed these conditions. *See Hargrave v. State*, 11-836 (La.App. 3 Cir. 12/21/11), 80 So.3d 1198. The supreme court reversed.

The court pointed out that, since *Crain Brothers*, the legislature has amended La.R.S. 23:1226 in significant ways that obviate the need for such conditions. Among these amendments was the requirement that the employer be responsible for the selection of a counselor, that the counselor be licensed, that the employee is allowed to file a claim to review the quality of the services, and that the employer can compel the employee's cooperation in the rehabilitation process. The court flatly held:

> [T]here is no requirement in La.Rev.Stat. 23:1226 that a vocational rehabilitation counselor must agree to certain conditions prior to providing vocational rehabilitation services. Certainly absent any showing by the claimant that there is an actual dispute as to the provision of services or the quality thereof, requiring the counselor to abide by such conditions, even if intended as a prophylactic measure, necessarily resorts to speculation and conjecture as to the future actions of the counselor. Accordingly, the OWC hearing officer and the court of appeal erred in requiring the vocational rehabilitation counselor to agree to certain conditions prior to the performance of rehabilitation services in the absence of an evidentiary showing that there was an actual dispute as to the quality of the services of the vocational rehabilitation counselor or the necessity for such services.

10

*Hargrave*, 100 So. 3d at 793.

*Hargrave* did not end the practice of trying to impose these conditions. In *Allen v. Affordable Home Furnishings*, 14-338 (La.App. 3 Cir. 10/1/14), 149 So.3d 836, *writ denied*, 14-2285 (La. 1/16/15), 157 So.3d 1132, the employer selected a vocational rehabilitation counselor who, upon arriving at counsel's office, was presented with a list of conditions before she was allowed to interview the employee. She indicated on the document that she elected not to sign the conditions, indicating that she would "need more time." *Id* at 838. She testified that it was her understanding that she would not be allowed to interview his client.

The employer sought reduction of the employee's benefits. At the hearing, the employee argued that he was not refusing rehabilitation. The WCJ disagreed because, as the counselor testified, she was told that she would not be allowed to meet with the employee unless she signed the document. The employee's benefits were reduced, and he appealed.

This court held (emphasis added), "[S]ince the amendments, a claimant has a means of redress when a rehabilitation counselor does not fulfill the statutory mandate. *However, a record of abuse must first be made before a remedy can be fashioned by the WCJ. Therefore, conditions may not be imposed on rehabilitation in advance of the provision of services.*" *Id.* at 840.

*Allen* holds other similarities to the case at bar. The employee in *Allen* argued on appeal that the WCJ erred in sustaining the employer's objections to questions posed to the counselor "regarding when she might sign a document and what a client might demand of her as a counselor." *Id.* The exact situation presents itself in this case and forms the basis for Mr. Nero's third assignment of error. In the present case, the WCJ sustained Allied's objections to relevancy because Mr. Nero refused

11

vocational rehabilitation services. In other words, there was no dispute before vocational rehabilitation services were rendered because Ms. Davidson was not allowed to perform them. We reach the same result as our colleagues in *Allen*. We find no error in the WCJ's evidentiary ruling. Mr. Nero argues that there was a bona fide dispute in this case because Ms. Davidson was in violation of Rule 2.6 of the Code because she refused to sign the conditions. Rule 2.6 states:

> Licensed rehabilitation counselors will honor the rights of clients to consent to participate and the right to make decisions with regard to rehabilitation services. They will inform the clients or their legal representative, using language that is reasonably understandable to the client and/or legal representative, of factors that may affect the clients' decision to take part in rehabilitation services, and they will obtain written consents once the clients or their legal representatives are fully informed of these factors. Licensed rehabilitation counselors who work with minors or other persons who are unable to give informed, voluntary consent will take special care to protect the interests of their clients.

Rule 2.6 imposes on the counselor the obligation to obtain consent from their clients "once the clients. . . are fully informed" of the factors that may affect the clients' right to participate in the rehabilitation process. This language presupposes that an actual discussion has taken place with the client. The basis of this "dispute" was Ms. Davidson's refusal to sign the conditions, many of which were not intended to inform Mr. Nero of any factors that might influence his decision to participate in the rehabilitation process; a process he chooses to not participate in at the peril of his continued benefits, per La.R.S. 23:1226(B)(3)(c). The questions the WCJ sustained Allied's objections to were irrelevant. To hold otherwise would negate the holdings in *Hargrave*, 100 So.3d 786, and *Allen*, 149 So.3d 836. It cannot be said on the one hand, "[T]he OWC hearing officer and the court of appeal erred in requiring the vocational rehabilitation counselor to agree to certain conditions prior to the performance of rehabilitation services in the absence of an. . .actual dispute[,]" and on the other allow the refusal to agree to those conditions to form the basis of a

dispute. *Hargrave*, 100 So.3d at 793. The WCJ did not err in denying Mr. Nero's motion to review the quality of services provided by Ms. Davidson.

*Was the reduction of Mr. Nero's benefits appropriate?*

Mr. Nero's fourth assignment of error asserts that the WCJ erred in reducing his benefits. As cited above, the refusal to cooperate in the vocational rehabilitation process may result in the reduction of the employee's benefits by fifty percent. La.R.S. 23:1226(B)(3)(c). Ms. Davidson wrote counsel for Mr. Nero and advised that she would not sign the conditions. He wrote back and advised that she would not be meeting with Mr. Nero until she did, in defiant opposition to the clear expressions of the Louisiana Supreme Court in *Hargrave*, 100 So.3d 876, and of this court in *Allen*, 149 So.3d 836.[8] We hold that attempting to impose conditions on the vocational rehabilitation counselor prior to any services being rendered and in the absence of a bona fide dispute over the *need* for vocational rehabilitation services constitutes refusal to cooperate in the vocational rehabilitation process. This assignment of error lacks merit.

*Exclusion of evidence*

In his examination of Ms. Davidson, Mr. Nero's counsel was precluded, after several objections by Allied's counsel, from questioning her further on whether hypothetical situations would represent violations of the Code. The WCJ sustained the objections on the grounds that Mr. Nero had declined Ms. Davidson's services.

We agree that the questions were irrelevant. "Clients," under the code, are "defined in the Code as individuals with disabilities who *are receiving services* from licensed rehabilitation counselors." La.Admin.Code 46:LXXXVI.1600, 1602(A) (emphasis added). Given that Mr. Nero declined Ms. Davidson's services, it would

---

[8] The egregiousness of this violation is exacerbated by the fact that Mr. Nero's counsel also represented Mr. Hargrave and Mr. Allen in their respective cases, which have been cited extensively herein.

not have been possible for her to have violated Rule 2.6, under which she owed an obligation to a "client." La.Admin.Code 46:LXXXVI.1602(A)(6). We find no error in the WCJ's ruling.

The WCJ's judgment as it relates to Mr. Nero's assignments of error is affirmed. We now turn to Allied's assignments of error.

*Termination of SEBs*

Allied argues that SEBs should be terminated retroactive to June 2015, the most recent date that Dr. Bernard opined that Mr. Nero was able to work. Allied asserts that the record is devoid of any evidence showing that Mr. Nero is unable to return to work. Mr. Nero has cited the court to no such evidence—and, during argument before this court, his attorney *refused* to answer a question about whether any evidence shows that his client could return to work.

The WCJ held that Allied's reliance solely upon Dr. Bernard's opinion was misplaced and that Allied was required to prove job availability in order to completely terminate SEBs. The WCJ's decision that an employee remains eligible for SEBs is reviewed under the manifest error standard, under which the finder of fact's determinations of issues of fact may only be reversed if the record, taken as a whole, reveals that the determination lacks a reasonable basis. *Poissenot v. St. Bernard Parish Sheriff's Office*, 09-2793 (La. 1/9/11), 56 So.3d 170. A multi-factorial analysis is employed to determine SEB eligibility, including job availability "in the employee's or employer's community or reasonable geographic region," jobs actually "offered or tendered by the employer or any other employer," the employee's age, education or training, and work history. La.R.S. 23:1221(3)(c)(i). SEBs are not solely dependent upon the employee's release to return to work; they also depend upon job availability, and this factor was not proven at the hearing. Even were this case not one that involved an employer attempting to terminate benefits,

14

the burden of proof in SEB eligibility rests on the employer to prove the existence of suitable employment, the wages the employee can earn in that employment, and the availability of an actual position for the particular job. *See Doane v. Omni Royal Orleans Hotel*, 16-144 (La.App. 4 Cir. 10/26/16), 204 So.3d 615.

The WCJ found that Allied failed to prove job availability. This factual finding is reviewed under the manifest error standard. *Poissenot*, 56 So.3d 170. That Allied was unable to introduce evidence of job availability is explained by Mr. Nero's intransigence against participating in the vocational rehabilitation process. It remains Allied's burden to prove job availability, and we find no error in the WCJ's ruling that Allied did not carry its burden of proof.

*Forfeiture of benefits and restitution*

Louisiana Revised Statutes 23:1208 makes it unlawful for any person to make a willfully false statement for the purpose of obtaining or defeating any workers' compensation benefit or payment. The statute provides for criminal and civil penalties, including restitution. Further, any employee violating La.R.S. 23:1208 "*shall*, upon determination by workers' compensation judge, forfeit any right to compensation benefits[.]" (Emphasis added). La.R.S. 23:1208(E). This court very recently summarized how it reviews decisions regarding forfeiture:

> A decision to impose or deny forfeiture under La.R.S. 23:1208 is a factual finding which will not be disturbed on appeal absent manifest error. *Brooks v. Madison Parish Serv. Dist. Hosp.*, 41,957 (La.App. 2 Cir. 3/7/07), 954 So.2d 207, *writ denied*, 07-720 (La. 5/18/07), 957 So.2d 155. To reverse a fact finder's determination under this standard of review, an appellate court must undertake a two-part inquiry: (1) the court must find from the record that a reasonable factual basis does not exist for the trial court's finding and (2) the court must determine that the record establishes that the finding is clearly wrong or manifestly erroneous. *Stobart v. State, Dep't of Transp. and Dev.*, 617 So.2d 880 (La.1993). Ultimately, the issue to be resolved by the reviewing court is not whether the fact finder was right or wrong, but whether its conclusion was reasonable. If the factual findings are reasonable in light of the record reviewed in its entirety, a reviewing court may not reverse

15

even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.

*Reeder v. Hardtner Med. Ctr.*, 17-1028, p. 6 (La.App. 3 Cir. 5/2/18), 244 So.3d 1244, 1248, *writ denied*, 18-917 (La. 9/28/18), 253 So.3d 153.

Allied argues that Mr. Nero violated La.R.S. 23:1208 when he testified at the hearing regarding a number of activities he was not able to undertake, such as hiking, hunting, climbing steps, and helping remediate flood damage at his home in 2016. He lacked the foresight to anticipate the use of his many social media postings depicting him doing all those things. The WCJ characterized Mr. Nero's testimony as having "almost reached the standpoint of violation of [La.R.S.] 23:1208," but that "it fits more comfortably as a credibility assessment."

The employer bears the burden of proving every element necessary to prove a violation of La.R.S. 23:1208: "(1) the claimant made a false statement or representation, (2) the statement was willfully made, and (3) the statement was made for the purpose of obtaining or defeating any benefit or payment." *Hodges v. Golden Nugget Lake Charles, LLC*, 17-936, p. 3 (La.App. 3 Cir. 3/7/18), 242 So.3d 654, 659. Elements of Mr. Nero's testimony were demonstrably false, and the WCJ noted this. Mr. Nero explained these as lapses of memory. The WCJ apparently accepted that explanation and determined that Allied had not carried its burden of proof. The standard of review does not allow us to reverse that finding if a reasonable basis exists in the record. At the very least, we are constrained to find that a reasonable basis exists in the record for the proposition that the statements were not willful, even if we would have found differently. We are forced to conclude that this assignment of error lacks merit.

16

*Allied's motion for sanctions*

Allied argues that Mr. Nero's counsel, Mr. Miller, should be sanctioned for his refusal to allow Ms. Davidson to interview Mr. Nero without first signing the form containing the *Crain Bros.* conditions. Allied argues that this court should find Mr. Miller in constructive contempt, citing La.R.S. 23:1310.7, which reads in pertinent part:

> A. A workers' compensation judge shall have the power to enforce any order or judgment he shall deem proper which is issued pursuant to the powers and jurisdiction provided for in this Chapter and the Constitution of Louisiana. This power shall not include the authority to order a person confined.

> B. (1) Direct contempt in a workers' compensation proceeding shall be as defined in Louisiana Code of Civil Procedure Article 222, except that it shall be committed before or in response to a subpoena or summons of a workers' compensation judge instead of the court. In a case of direct contempt, the workers' compensation judge may assess a civil fine of up to five hundred dollars for each such contempt violation which shall be payable to the Kids Chance Scholarship Fund, Louisiana Bar Foundation.

> (2) Constructive contempt in a workers' compensation proceeding shall be as defined in Louisiana Code of Civil Procedure Article 224, except that it shall be concerning the workers' compensation judge and hearing procedures instead of the court. In a case of constructive contempt, the workers' compensation judge may assess a civil fine of up to five hundred dollars for each such contempt violation which shall be payable to the Kids Chance Scholarship Fund, Louisiana Bar Foundation.

Regarding constructive contempt, this court has said:

> Pursuant to our Code of Civil procedure, constructive contempt is "[w]ilful disobedience of any lawful judgment, order, mandate, writ, or process of the court." La.Code Civ.P. art. 224(2). "[A] finding that a person wilfully [sic] disobeyed a court order in violation of La.Code of Civil Proc. art. 224(2) must be based on a finding that the accused violated an order of the court 'intentionally, knowingly, and purposefully, without justifiable excuse.'" *Lang v. Asten, Inc.,* 05–1119, p. 1 (La.1/13/06), 918 So.2d 453, 454 (quoting *Brunet v. Magnolia Quarterboats, Inc.,* 97–187, p. 10 (La.App. 5 Cir. 3/11/98), 711 So.2d 308, 313, *writ denied,* 98–0990 (La.5/29/98), 720 So.2d 343, *cert. denied sub nom. Polaris Ins. Co., Ltd. v. Brunet,* 525 U.S. 1104, 119 S.Ct. 869, 142 L.Ed.2d 771 (1999) ).

17

*LeBlanc v. LeBlanc*, 06-1307, p. 5 (La.App. 3 Cir. 3/7/07), 953 So.2d 115, 120. A finding of contempt, either direct or constructive, presupposes the willful, intentional, knowing, purposeful, and unjustifiable disobedience of an order *in the case in which contempt is considered.* To hold otherwise would significantly deter a "nonfrivolous argument for the extension, modification, or reversal of existing law" allowed by La.Code Civ.P. art. 863(B)(2). Allied's motion for sanctions is denied.

The rulings of the WCJ on converting Mr. Nero's benefits from TTD to SEB, on reducing the SEBs for his refusal to participate in the vocational rehabilitation process, on limiting Mr. Nero's examination of Ms. Davidson, on not terminating Mr. Nero's SEBs, and on not sanctioning Mr. Nero's counsel are affirmed. Allied's motion for sanctions is denied. All costs of this proceeding are taxed to Plaintiff/Appellant, Ronald Nero.

**JUDGMENT AFFIRMED. MOTION FOR SANCTIONS DENIED.**