# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 18-708

**SONIC OF AMBASSADOR**

**VERSUS**

**DAMON RICHARD**

************

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 04
PARISH OF LAFAYETTE, NO. 16-00152
HONORABLE ANTHONY PALERMO, WORKERS COMPENSATION JUDGE

************

## SYLVIA R. COOKS
## JUDGE
************

Court composed of Sylvia R. Cooks, Billy H. Ezell, and Candyce G. Perret, Judges.

**AFFIRMED, AS AMENDED.**

Dennis R. Stevens
Gibbens & Stevens
222 West St. Peter Street
New Iberia, LA 70560
(337) 367-8451
COUNSEL FOR PLAINTIFF/APPELLEE:
     Sonic of Ambassador

Michael B. Miller
P.O. Drawer 1630
Crowley, LA 70527-1630
(337) 785-9500
COUNSEL FOR DEFENDANT/APPELLANT:
     Damon Richard

**COOKS, Judge.**

## FACTS AND PROCEDURAL HISTORY

On August 22, 2012, Damon Richard was injured while in the course and scope of his employment with Sonic of Ambassador. Mr. Richard was treated by Dr. John D. Sledge, III, an orthopedist, following the accident. Dr. Sledge stated in a report dated July 8, 2015, that Mr. Richard was capable of sedentary work.

Sonic then requested that Mr. Richard attend vocational rehabilitation services with Ms. Jennifer Jones of GENEX. Mr. Richard rejected the services of GENEX, noting that another employee of GENEX had provided nurse case manager services in this matter.

On January 8, 2016, Sonic filed a motion to compel vocational services with the Office of Workers' Compensation (OWC). In response, on May 18, 2016, Mr. Richard filed a motion to dispute vocational services, penalties and attorney fees under La.R.S. 23:1226.

On June 30, 2016, Sonic filed another motion to allow vocational rehabilitation. In that motion, noting the "Court's ruling that Genex not be allowed to provide vocational rehabilitation services due to the fact that it provided medical management services," Sonic requested that CoreCare Management be allowed to provide vocational rehabilitation services to Mr. Richard. Sonic noted in its motion that counsel for Mr. Richard had sent to the counselor for CoreCare, Shelley Brantley, a letter proposing certain conditions which Ms. Brantley was required to agree with or disagree with before she could meet with Mr. Richard. Ms. Brantley refused to comply, and Sonic also requested the court make a determination as to whether the vocational counselor needed to execute the contract in question.

A hearing was held on February 18, 2017, with evidence and argument of counsel received. Subsequent to the hearing, a judgment was signed on March 1, 2017, holding the "Motion to Compel Vocational Rehabilitation filed by Sonic of

Ambassador is denied at this time." Sonic maintained the motion was denied because the trial court felt the testimony of Shelley Brantley, who was not present that day to testify, would be helpful to resolution of the issue. A scheduling order was issued setting October 2, 2017, for a trial on the merits. A telephonic conference was held with the parties and OWC wherein the merits trial scheduled for October 2, 2017, was continued and another hearing on the vocational rehabilitation issue was to be held on that date.

On October 2, 2017, although Shelley Brantley was present and available to testify, the OWC determined the testimony of Ms. Brantley was not necessary. Sonic argued under *Hargrave v. State*, 12-341 (La. 10/16/12), 100 So.3d 786, because there was no dispute concerning the quality or nature of the services in question of the vocational counselor, Ms. Brantley could not be required to abide by the conditions set forth in the contract presented to her by Mr. Richard. Counsel for Mr. Richard argued it was not a requirement for Ms. Brantley to agree or disagree with any of the conditions that were set forth in the contract, "only that [she] tell me which one [she was] going to follow and which one [she] would not follow." No new evidence, witnesses or documents were introduced at the hearing. The OWC ordered that vocational rehabilitation services were to go forward. The following discussion occurred in open court between the OWC and counsel for Mr. Richard (Mr. Miller):

> THE COURT: I'm ordering that the vocational rehabilitation can go forward. Basically what I'm doing today is I'm compelling [Mr. Richard] to meet with the vocational rehabilitation counselor in order that there be an exchange of information. If after that time, he decided not to go forward, that's a different issue, in my mind.
>
> MR. MILLER: Well, its because after an order if he does that then they're going to – they're going to penalize him fifty percent.
>
> THE COURT: Well –

MR. MILLER: That's why the order is so important. And the fact of the matter is, Judge, is if she meets with him I can tell you – I

2

can't tell you how many voc rehab counselors meet one time with my client. Once. That's it. You know why? They get the information they need and they don't come back.

THE COURT: Right.

MR. MILLER: So what I'm saying is he gets everything she wanted in the first time she meets with him, and there's not a thing I can do about it or my client.

THE COURT: No. What I'm saying, Mr. Miller, is that when she meets with your client if she's not willing to provide you with the answers to questions that comply with the Code of Professional Ethics, that your client is free to say that he doesn't wish to proceed any further. That's a different situation.

MR. MILLER: Well, suppose she comes and I ask her these questions that are in that list and she refuses to answer. I can't stop because I'm under order to undergo to the voc rehab. My client is going to be penalized fifty percent.

THE COURT: Okay. This is what I'm going to do. I'm going to order that instead of having the Motion to Compel Vocational Rehabilitation, I'm going to order that a meeting occur between Mr. Richard, whoever the – I forget who the vocational rehabilitation person is – and Mr. Miller and that the meeting be for the purposes of exchanging information.
At that point in time, Mr. Richard can determine whether he's going to acquiesce in the vocational rehabilitation or not. Okay? But its – up to that point, I don't think that there is a true conflict here. Okay? I'll prepare the judgment.

MR. MILLER: Okay. Thank you, Judge.

Written reasons for judgment were requested by Mr. Richard. On December 6, 2017, a rule to show cause hearing was set for January 19, 2018, to determine why Mr. Richard's case should not be dismissed. On January 5, 2018, the OWC granted the motion to compel vocational rehabilitation and further ruled "the above-captioned matter is dismissed without prejudice." This was done prior to the January 19, 2018 rule to show cause hearing being held. A February 6, 2018 Judgment of Dismissal was entered into the record. Mr. Richard notes on January 16, 2018, counsel for Sonic sent a letter to the OWC, stating as follows:

We are in receipt of a Notice of Hearing on a Rule to Show Cause why the case should not be dismissed. You will recall that this matter was submitted to the court on the motion of Sonic of Ambassador,

specifically a Motion to Compel Vocational Rehabilitation. The court ruled on the motion, granting the motion and subsequently the court issued its written judgement. Counsel for Damon Richard has filed a request for written reasons for judgement.

Accordingly, Sonic of Ambassador suggests this rule to show cause why the case should not be dismissed, was issued in error, and requests that the hearing scheduled on Friday, January 19, 2018, should be rendered moot.

Mr. Richard has appealed the Judgment of Dismissal contending he was deprived of his trial on the merits. He asserts a dismissal, even without prejudice, could have serious consequences for his claim. Mr. Richard asserts the following assignments of error:

1. The workers' compensation judge erred when he dismissed Mr. Richard's case.

2. It was error for the workers' compensation judge to find that vocational rehabilitation was appropriate and should move forward.

3. The workers' compensation judge erred in failing to address Mr. Richard's motion to dispute vocational services.

4. The workers' compensation judge erred in his factual finding that Mr. Richard required that Ms. [Brantley] comply with all the conditions.

5. The workers' compensation judge erred in changing the March 1, 2017 judgment without any new evidence.

## ANALYSIS

Louisiana Revised Statutes 23:1226 governs the rehabilitation of injured employees, and provides, in pertinent part:

A. When an employee has suffered an injury covered by this Chapter which precludes the employee from earning wages equal to wages earned prior to the injury, the employee shall be entitled to prompt rehabilitation services. Vocational rehabilitation services shall be provided by a licensed professional vocational rehabilitation counselor, and all such services provided shall be compliant with the Code of Professional Ethics for Licensed Rehabilitation Counselors as established by R.S. 37:3441 et seq.

B. (1) The goal of rehabilitation services is to return a disabled worker to work, with a minimum of retraining, as soon as possible after an injury occurs. The first appropriate option among the following must be chosen for the worker:

4

(a) Return to the same position.

(b) Return to a modified position.

(c) Return to a related occupation suited to the claimant's education and marketable skills.

(d) On-the-job training.

(e) Short-term retraining program (less than twenty-six weeks).

(f) Long-term retraining program (more than twenty-six weeks but not more than one year).

 (g) Self-employment.

(2) Whenever possible, employment in a worker's local job pool must be considered and selected prior to consideration of employment in a worker's statewide job pool.

(3)(a) The employer shall be responsible for the selection of a licensed professional vocational rehabilitation counselor to evaluate and assist the employee in his job placement or vocational training. Should the employer refuse to provide these services, or a dispute arises concerning the work of the vocational counselor, the employee may file a claim with the office to review the need for such services or the quality of services being provided. The employee shall have a right to an expedited summary proceeding pursuant to R.S. 23:1201.1(K)(8). The workers' compensation judge shall set a hearing date within three days of receiving the motion. The hearing shall be held not less than ten, nor more than thirty days, after the employer or payor receives notice, delivered by certified or registered mail, of the employee's motion. The workers' compensation judge shall provide notice of the hearing date to the employer and payor at the same time and in the same manner that notice of the hearing date is provided to the employee or his attorney. For the purposes of this Section, an employee shall not be required to submit the dispute on the issue of vocational services to mediation or go through a pretrial conference before obtaining a hearing. The hearing shall be conducted as a rule to show cause.

(b) An employee shall have no right of action against a vocational counselor for tort damages related to the performance of vocational services unless and until he has exhausted the administrative remedy provided for in Subparagraph (a) of this Paragraph. The running of prescription shall be suspended during the pendency of the administrative proceedings provided for in this Paragraph.

(c) Upon refusal by the employee, the employer or payor may reduce weekly compensation, including supplemental earnings benefits pursuant to R.S. 23:1221(3), by fifty percent for each week of the period of refusal. Reduction of benefits by the employer or payor shall be

made in accordance with the provisions of R.S. 23:1201.1(A) through (E).

C. (1) Rehabilitation services required for disabled workers may be initiated by:

(a) An insurer or self-insured employer by designating a rehabilitation provider and notifying the office.

(b) The office by requiring the insurer or self-insured employer to designate a rehabilitation provider.

(c) The employee, through a request to the office. The office shall then require the insurer to designate a rehabilitation provider.

(2) Rehabilitation services provided under this Part must be delivered through a rehabilitation counselor approved by the office.

In his first assignment of error, Mr. Richard contends the OWC erred when it "dismissed Mr. Richard's case." We note the only 1008 claim filed by the parties in this matter was Sonic's Motion to Compel Vocational Rehabilitation Services. That motion was followed by Mr. Richard's responsive motion to dispute vocational services, penalties and attorney fees. Thus, the only issue in dispute before the OWC was the vocational rehabilitation issue. A complete review of the record shows there was never any discussion, evidence taken, or any ruling on any other issue before the OWC relating to Mr. Richard's injury, entitlement to compensation, etc. The record further shows the OWC only discussed the issue of whether vocational rehabilitation would move forward with Ms. Brantley. The judgment at issue granted the motion to compel vocational rehabilitation and further set forth "the above-captioned matter is dismissed without prejudice." As the only issue before the OWC was resolved, the case was properly dismissed. We will amend the dismissal language to reflect the dismissal was directed only to the vocational rehabilitation issue raised in Sonic's 1008 claim, reserving to the worker all other rights and remedies provided by law.

Mr. Richard also has argued that Sonic advised the OWC that dismissal of the action should not take place. This is not accurate. Sonic wrote the letter, set forth in the facts section above, to suggest to the OWC that the Notice of a Hearing on a Rule to Show Cause as to why the case should not be dismissed was moot, because the claim had already been dismissed by the OWC as evidenced by its oral reasons for judgment and accompanying Judgment of Dismissal of January 6, 2018. Moreover, Sonic notes the letter to the trial court was drafted "after consultation and approval from counsel for Damon Richard."

Mr. Richard's remaining assignments of error involve the trial court's judgment holding vocational rehab would move forward with Ms. Brantley. In this case, counsel for Mr. Richard proposed certain conditions which Ms. Brantley was required to agree with or disagree with before she could meet with Mr. Richard. Ms. Brantley refused, so Sonic filed the motion to compel vocational rehabilitation. Mr. Richard argues the conditions, which are essentially identical to those adopted by this court in *Crain Brothers, Inc. v. Richard*, 02-1342 (La.App. 3 Cir. 4/9/03), 842 So.2d 523, are a reasonable response to a history of "sham rehabilitation" in workers' compensation cases. The OWC found Ms. Brantley was not required to list what conditions she would or would not agree to, finding the Louisiana Supreme Court in *Hargrave v. State*, 12-341 (La.10/16/12), 100 So.3d 786, concluded such conditions were not reasonable nor necessary. The supreme court in *Hargrave* noted the legislature made several amendments to La.R.S. 23:1226 since the decision in *Crain Brothers*, which "clearly recognized a right of the employee to challenge the quality of the vocational rehabilitation services and, consequently, set forth a procedure for resolving any disputes concerning the work of the vocational rehabilitation counselor." *Id.* at 790.

Recently, in *Allen v. Affordable Home Furnishings*, 14-338 (La.App. 3 Cir. 10/1/14), 149 So.3d 836, *writs denied*, 14-2285 (La. 1/16/15), 157 So.3d 1132, this

7

court addressed a nearly identical situation. There a vocational rehabilitation counselor was presented with a document requesting she agree to certain conditions and asking that if she did not agree to the conditions, she list the conditions with which she did not agree to follow. In finding that conditions may not be imposed on rehabilitation before vocational rehab services were provided, this court reasoned:

> As in *Hargrave v. State*, 12-341 (La.10/16/12), 100 So.3d 786, Allen seems to be arguing that the conditions are a reasonable response to the history of sham rehabilitation cases in the past. However, the court in *Hargrave* addressed the effect of the 2003 and 2005 amendments to 23:1226 on the imposition of conditions on a rehabilitation counselor.
>
> > The 2003 amendment therefore allowed the employee to file a claim with the OWC to review the "quality of services being provided" if "a dispute arises concerning the work of the vocational counselor. . . ." Acts 2003, No. 980. The 2003 amendment also added paragraphs 3(b) and 3(c) to grant the counselor limited immunity from tort and to allow the employer to compel the employee's cooperation in the rehabilitation process. If the employee refuses to accept rehabilitation as deemed necessary by the OWC, he shall be subject to a fifty percent reduction in weekly compensation for each week of the period of refusal. La.Rev.Stat. 23:1226(B)(3)(c). The 2005 amendment mandated the counselor be a licensed professional vocational rehabilitation counselor. Acts 2004, No. 257. Thus, the legislature clearly recognized a right of the employee to challenge the quality of the vocational rehabilitation services and, consequently, set forth a procedure for resolving any disputes concerning the work of the vocational rehabilitation counselor.
>
> > . . . .
>
> > As the *Interiano* [*v. Fernando Pastrana Const.*, 04-430 (La.App. 5 Cir. 10/26/04), 887 So.2d 547] court reasoned, there is no requirement in La.Rev.Stat. 23:1226 that a vocational rehabilitation counselor must agree to certain conditions prior to providing vocational rehabilitation services. Certainly absent any showing by the claimant that there is an actual dispute as to the provision of services or the quality thereof, requiring the counselor to abide by such conditions, even if intended as a prophylactic measure, necessarily resorts to speculation and conjecture as to the future actions of the counselor.
>
> In other words, since the amendments, a claimant has a means of redress when a rehabilitation counselor does not fulfill the statutory mandate. However, a record of abuse must first be made before a

remedy can be fashioned by the WCJ. Therefore, conditions may not be imposed on rehabilitation in advance of the provision of services.

*Id.* at 840 (alterations in original).

We find no error in the OWC's conclusion that *Hargrave* controls here. *Hargrave* requires there be a true dispute as to the provision of rehabilitation services and the quality thereof to require the vocational rehabilitation counselor to submit to such conditions. As no services have yet been rendered, there can be no dispute as to the quality of same. Thus, the judgment ordering that vocational rehabilitation services were to proceed and dismissing Mr. Richard's motion to dispute vocational services was not erroneous.

## DECREE

For the foregoing reasons, the judgment of the Office of Workers' Compensation is affirmed. The Judgment of Dismissal is amended to reflect the dismissal was directed only to the vocational rehabilitation issue raised in Sonic's 1008 claim, reserving to the worker all other rights and remedies provided by law. Costs of this appeal are assessed to Appellant, Damon Richard.

**AFFIRMED, AS AMENDED.**